1

2

3

E. K. Wade (Pro Se)
2802 Cimarron Blvd., #343
Corpus Christi, TX  78414
(925) 323-1578

United States Courts
Southern District of Texas
FILED

JUN 0 1 2012

David J. Bradley, Clerk of Court

4

5

**Attorney for Plaintiff**

6

7

8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF TEXAS

10

### CORPUS CHRISTI DIVISION

11

**E. K. Wade**

12

                                          **Plaintiff,**

13

**vs.**

14

**DANIEL AKAKA** (D-HI), **LAMAR**

15

**ALEXANDER** (R-TN), **KELLY AYOTTE**
(R-NH), **JOHN BARRASSO** (R-WY), **MAX**

16

**BAUCUS** (D-MT), **MARK BEGICH** (D-

17

AK), **MICHAEL BENNET** (D-CO), **JEFF
BINGAMAN** (D-NM), **RICHARD**

18

**BLUMENTHAL** (D-CT), **ROY BLUNT** (R-
MO), **JOHN BOOZMAN** (R-AR),

19

**BARBARA BOXER** (D-CA), **SHERROD**

20

**BROWN** (D-OH), **SCOTT BROWN** (R-
MA), **RICHARD BURR** (R-NC), **MARIA**

21

**CANTWELL** (D-WA), **BEN CARDIN** (D-
MD), **THOMAS CARPER** (D-DE),

22

**ROBERT CASEY** (D-PA), **SAXBY**

23

**CHAMBLISS** (R-GA), **DAN COATS** (R-
IN), **TOM COBURN** (R-OK), **THAD**

24

**COCHRAN** (R-MS), **SUSAN COLLINS**
(R-ME), **KENT CONRAD** (D-ND), **CHRIS**

25

**COONS** (D-DE), **BOB CORKER** (R-TN),

26

**JOHN CORNYN** (R-TX), **MIKE CRAPO**
(R-ID), **JIM DeMINT** (R-SC), **DICK**

27

**DURBIN** (D-IL), **MIKE ENZI** (R-WY),

28

**DIANE FEINSEIN** (D-CA), **AL FRANKEN**
(D-MN), **KIRSTEN GILLIBRAND** (D-NY),
**LINDSEY GRAHAM** (R-SC), **CHUCK**

Case No. 2:12cv179

**PRELIMINARY INJUNCTION, DECLATORY RELIEF, AND MONEY DAMAGES:**

**(Bivens claim of Conspiracy to Intentionally Deprive Plaintiff's Due Process and Neglect to Prevent Conspiracy as it Relates to VA Benefits** (through Age discrimination) **against** Akaka et al (42 U.S.C. §§ 1983, 1985(3), 1986, and 1988));

(Unconstitutionality of the Vow to Hire Heroes Act)

Fed.Rul.Civ.Proc. 65(a)(1-2);
U.S. Const. amend. V;
Texas Const., Art. 1, § 3;
42 U.S.C. § 1985(3);
Firestone Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996) (**Civil Conspiracy**);
42 U.S.C. § 1983;
42 U.S.C. § 1986;
42 U.S.C. § 1988(b);
Tex. Civ. Prac. & Rem. Code § 41.001 (11) (A)-(B)  (**Gross Negligence**);
Age Discrimination Act of 1975;
38 C.F.R. § 18.511(a-b)(1-2)(c);
38 C.F.R. § 18.503(e);
Fed.R.Evid. § 901(a);
Fed.R.Evid. § 901(b)(7)(A-B); and
Fed.R.Evid. § 902(5)
Buchanan v. Warley 245 U.S. 60 (1917);
Bivens v. Six Unknown Narcotics Agents.

GRASSLEY (R-IA), **TOM HARKIN** (D-IA), **ORRIN HATCH** (R-UT), **DEAN HELLER** (R-NV), **JOHN HOEVEN** (R-ND), **KAY BAILEY HUTCHISON** (R-TX), **JAMES INHOFE** (R-OK), **JOHNNY ISAKSON** (R-GA), **MIKE JOHANNS** (R-NE), **TIM JOHNSON** (D-SD), **RON JOHNSON** (R-WI), **JOHN KERRY** (D-MA), **MARK KIRK** (R-IL), **AMY KLOBUCHAR** (D-MN), **HERB KOHL** (D-WI), **JON KYL** (R-AZ), **MARY LANDRIEU** (D-LA), **FRANK LAUTENBERG** (D-NJ), **PATRICK LEAHY** (D-VT), **MIKE LEE** (R-UT), **CARL LEVIN** (D-MI), **JOSEPH LIEBERMAN** (ID-CT), **DICK LUGAR** (R-IN), **JOE MANCHIN** (D-WV), **CLAIRE McCASKILL** (D-MO), **MITCH McCONNELL** (R-KY), **ROBERT MENENDEZ** (D-NJ), **JEFF MERKLEY** (D-OR), **BARBARA MIKULSKI** (D-MD), **JERRY MORAN** (R-KS), **LISA MURKOWSKI** (R-AK), **PATY MURRAY** D-WA), **BILL NELSON** (D-FL), **BEN NELSON** (D-NE), **RAND PAUL** (R-KY), **ROB PORTMAN** (R-OH), **MARK PRYOR** (D-AR), **JACK REED** (D-RI), **HARRY REID** (D-NV), **JAMES RISCH** (R-ID), **PAT ROBERTS** (R-KS), **JAY ROCKEFELLER** (D-WV), **MARCO RUBIO** (R-FL), **BERNIE SANDERS** (ID-VT), **CHARLES SCHUMER** (D-NY), **JEANNE SHAHEEN** (D-NH), **RICHARD SHELBY** (R-AL), **DEBBIE STABENOW** (D-MI), **JOHN TESTER** (D-MT), **JOHN THUNE** (R-SD), **PAT TOOMEY** (R-PA), **MARK UDALL** (D-CO), **TOM UDALL** (D-NM), **DAVID VITTER** (R-LA), **MARK WARNER** (D-VA), **JIM WEBB** (D-VA), **SHELDON WHITEHOUSE** (D-RI), **ROGER WICKER** (R-MS), **RON WYDEN** (D-OR), **HILDA SOLIS,** Secretary of the U.S. Department of Labor (DOL), **ERIC K. SHINSEKI,** Secretary of the U. S. Department of Veterans Affairs (VA), **JANET NAPOLITANO**, Secretary of the U.S. Department of Homeland Security, and **LEON PANETTA**, Secretary of the U.S.

403 U.S. 388 (1971);
Gordon v. Scott, 6 S.W.3d 365 (1999);
Davis v. Passman, 442 U.S. 228 (1979);
Harlow v. Fitzgerald, 102 S.Ct. 2727 (1982); U.S. v. Rodriquez-Velez, 597 F.3d 32 (2010); Williams v. Long, 585 F.Supp.2d 679 (2008); and Smith v. Wade, 103 S.Ct. 1625 (1983).

**(Bivens claim of Intentional Infliction of Emotional Distress (mental anguish) in Furtherance of Conspiracy and Deprivation of Due Process against Akaka et al (42 U.S.C. §§ 1983, 1985(3), 1986, and 1988));**

Rest. 2d Torts, § 46; and
Covington v. Beaumont Ind. School Distr., 738 F.Supp. 1041 (E.D.Tex. 1990).

.

Department of Defense (DOD), In their
Individual capacities.

**Defendants.**

**DEMAND BENCH TRIAL**

---

**Plaintiff alleges:**

## PRELIMINARY ALLEGATIONS

1.  Jurisdiction.  This court has jurisdiction over this complaint because it arises
    under the laws of the United States, pursuant to 28 U.S.C. § 1331.

2.  Venue.  Venue is appropriate in this court because Defendant resides in this
    district, and a substantial amount of the acts and omissions giving rise to this
    lawsuit occurred in this district.

3.  Intradistrict Assignment.  This lawsuit should be assigned to the Southern
    District of Texas because a substantial part of the events or omissions which
    give rise to this lawsuit occurred in Nueces County.

4.  Plaintiff is an individual, 64 year-old African American, disabled American
    veteran with a 100% service-connected disability rating; a Purple Heart recipient,
    receiving medical benefits as set forth in 38 C.F.R. § 17.38, and at all times
    herein mentioned was a resident of Corpus Christi, Texas.  [*TAB 1*]

5.  Plaintiff is informed and believes and on that basis alleges that aforementioned
    named Defendants are agents of government entities doing business in Texas
    with its principal place of business located within Corpus Christi, Texas, Nueces
    County, State of Texas; and that Defendants are officers of the United States

Senate (U.S.), U.S. Departments of Labor, Veterans Affairs, Homeland Security, and Defense, respectively.

6.   Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants was an agent and employee of each of the remaining defendants, and in doing the things hereinafter alleged, acting within the scope of their employment and in furtherance of the United States' business, and acting within their individual capacities.

## FIRST CAUSE OF ACTION
**(Bivens claim of Conspiracy to Intentionally Deprive Plaintiff's Due Process of Law and Neglect to Prevent Conspiracy as it Relates to VA Benefits (through Age discrimination) against Akaka, et al (42 U.S.C. §§ 1983, 1985(3), 1986, and 1988)**

7.   Plaintiff herein hereby refers to paragraphs 1 through 6 and each of them and incorporates same herein as though fully realleged.

8.   On **November 10, 2011**, the U.S. Senate voted (95-0) **H.R. 674** (Vow to Hire Heroes Act (hereinafter "Act")) into legislation. [*TAB 2*]

9.   On **November 11, 2011**, President Barack Obama signed into law the Act, on which Miller (The Vow Act – HR 2433), Murray (The Hiring Our Heroes Act – S.951), Secretaries Solis, Shinseki, Napolitano, and Panetta administered. Representatives Miller and Murray sought to combine their aforementioned Acts with President Obama's American Jobs Act (through a press release), which outlined the Act; and the administrative responsibilities of each Secretary. Defendants *Akaka et al* voted (had a meeting of the minds) and agreed (95-0) to limit the Act's age eligibility requirements to veterans 35-60 years of age. [*TAB 3*]

10. In principle, the provision of the Act purports to have a positive impact upon the unemployment rate for similarly situated older veterans.  The most often reported of these are tax credits for employers who hire veterans and wounded warriors ($5,600/veteran and $9,600/disabled veteran, respectively).  The pre-9/11 veterans, like Plaintiff, who often feel as if they have been forgotten, could qualify for as much as $17,600, which could be used for education and training to include, but not limited to, college degrees, certification, vocational training, on-the-job training, and more.  This Act could help about 60 percent of the current 850,000 unemployed veterans.  However, although the Act is extremely beneficial to many veterans, in order to qualify for the benefits (among other things), veterans must be 35-60 years of age, not be in receipt of compensation for service-connected disability rated totally disabled by reason of unemployability (100%), unemployed, and not currently enrolled (or within the past 6 months) in a state or federal job training program. In a nutshell, this Act purports to offer veterans, ages 35-60 additional benefits of education and re-training, but excludes veterans over age 60.

11. On **May 15, 2012**, Plaintiff applied for admissions to Del Mar College, in Corpus Christi, Texas, to obtain an Associate's Degree in Criminal Justice, with aspirations of supervising First Line Correctional Officers.  [*TAB 4*]

12. On **May 22, 2012**, Plaintiff enrolled in Juvenile Justice (CRIJ – 1313) and Police Systems and Practices (CRIJ – 2328) classes, scheduled to begin on July 9, 2012, respectively.  [*TAB 5*]

13. On **May 22, 2012**, Plaintiff filed an online Joint DOL/VA application for the Veterans Retraining and Assistance Program (VRAP) (VA Form 1990R).  [***TAB 6***]

14. On **May 22, 2012**, Plaintiff submitted the above-mentioned application for DOL approval.  Upon submittal of the VA Form 1990R, Plaintiff received a letter (in PDF format) from DOL, stating, *"Based upon the information provided on your application, the Department of Labor has determined that you are not eligible to participate in the Veterans Retraining and Assistance Program (VRAP).  You have not met the following criteria for the VRAP: The applicant must be at least 35 years old and not older than 60 at the time of application." [**TAB 7**]*

15. On **May 23, 2012**, Plaintiff, anguished, humiliated, degraded, frustrated, severely disappointed, embarrassed, and shamefully locked out, and distressed, immediately checked into the VA Outpatient Clinic, in Corpus Christi, Texas, for psychiatric counseling and medication to calm his fears and anxiety, brought on by actions of the aforementioned named Defendants. [***TAB 8***]

16. In a nutshell, the Defendants' conspiratorial agreement to limit the age requirements of the Act was the moving force that caused Plaintiff's constitutional injury – violation of due process.

17. "(a) Preliminary Injunction.  (1) Notice.  The court may issue a preliminary injunction only on notice to the adverse party. (2) Consolidating the hearing with the Trial on the Merits.  Before or after beginning the hearing on a motion for preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing.  Even when consolidation is not ordered,

evidence that is received on the motion and that would be admissible at trial

becomes part of the trial record and need not be repeated at trial.  But the court

must preserve any party's right to a jury trial." ***Fed.Rul.Civ.Proc. 65(a)(1-2)***

**18.**  No person shall be held to answer for a capital, or otherwise infamous crime,

unless on a presentment or indictment of a Grand Jury, except in cases arising

in the land or naval forces, or in the Militia, when in actual service in time of War

or public danger; nor shall any person be subject for the same offense to be

twice put in jeopardy of life or limb; nor shall be compelled in any criminal case

to be a witness against himself, nor be deprived of life, liberty, or property,

without due process of law; nor shall private property be taken for public use,

without just compensation. ***U.S. Const. amend. V***

**19.**  "All free men, when they form a social compact, have equal rights, and no man,

or set of men, is entitled to exclusive separate public emoluments, or privileges,

but in consideration of public services." ***Texas Const., Art. 1 § 3***

**20.**  "...that equal protection and security should be given to all under like

circumstances in the enjoyment of their personal and civil rights; that all persons

should be equally entitled to pursue their happiness and acquire and enjoy

property; that they should have like access to the courts of the country for the

protection of their persons and property, the prevention and redress of wrongs

and the enforcement of contracts; that no impediment should be interposed to

the pursuits of anyone except as applied to the same pursuits by others under

like circumstances; that no greater burden should be laid upon one than are laid

upon others in the same calling and conditions, and in the administration of

criminal justice no different or higher punishment should be imposed upon one

than such as is prescribed to all for like offenses." *Barbier v. Connolly, 113 U.S.*

*27, 28 (1885)*

21. "If two or more persons in any State or Territory conspire or go in disguise on the

highway or on the premises of another, for the purpose of depriving, either

directly or indirectly, any person or class of persons of the equal protection of the

laws, or of equal privileges and immunities under the laws; or for the purpose of

preventing or hindering the constituted authorities of any State or territory from

giving or securing to all persons within such State or Territory the equal

protection of the laws; or if two or more persons conspire to prevent by force,

intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his

support or advocacy in a legal manner, toward or in favor of election of any

lawfully qualified person as an elector for President or Vice President, or as a

Member of Congress of the United States; or to injure any citizen in person or

property on account of such support or advocacy; in any case of conspiracy set

forth in this section, if one or more persons engaged therein do, or cause to be

done, any act in furtherance of the object of such conspiracy, whereby another is

injured in his person or property, or deprived of having and exercising any right

or privilege of a citizen of the United States, the party so injured or deprived may

have an action for the recovery of damages occasioned by such injury or

deprivation, against any one or more of the conspirators." ***42 U.S.C. § 1985(3)***

22. "To come within the legislation a complaint must allege that the defendants did

1) "conspire or go in disguise on the highway or one the premises of another' 2)

"for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'  It must then assert that one or more of the conspirators 3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was 4(a) 'injured in his person or property; or 4(b) 'deprived of having and exercising any right or privilege of a citizen of the United States."

*Griffin v. Breckenridge, 91 S.Ct. 1790 (1971)*

23.  A civil conspiracy consists of a combination by two or more persons to accomplish an unlawful purpose or a lawful purpose by unlawful means.

*Firestone Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996).* (Conspiracy)

24.  The elements of civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)

25.  "Every person who, under ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the Jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or

declarative relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." *42 U.S.C. § 1983*

26. To state a claim under 42 U.S.C. § 1983, a plaintiff must show that: 1) the conduct complained of was committed by a person acting under color of state law; and 2) that the conduct deprived her of her rights, privileges, or immunities secured by the Constitution or laws of the United States.  See, e.g., *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 146 (3rd Cir. 1995)*

27. "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and my recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased.  But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." *42 U.S.C. § 1986*

**28.** "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the religious Freedom Restoration act of 1993 [42 U.S.C.A. § 2000bb et seq.] the Religious Land Use and Institutionalized Persons Act of 1964 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction." *42 U.S.C. § 1988(b)*

**29.** "'Gross negligence' means an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." (Gross Negligence) *Tex. Civ. Prac. & Rem. Code § 41.001 (11) (A)-(B)*

**30.** "...no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Section 6102 of the Age Discrimination Act of 1975*

**31.** "(a) General rule.  No person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.  (b) Specific rules.  A recipient may not, in any program or activity receiving federal assistance, directly through contractual licensing, or other arrangements, using age distinctions or take any other actions which have the effect, on the base of age, of: (1) excluding individuals from, denying them benefits of, or subjecting them to discrimination under, a program or activity receiving Federal financial assistance; or (2) denying or limiting individuals in their opportunity to participate in any program or activity receiving Federal financial assistance.  (c) The specific forms of age discrimination listed in paragraph (b) of this section do not necessarily constitute a complete list."
***38 C.F.R. § 18.511(a-b)(1-2)(c)***

**32.** "Age discrimination means unlawful treatment based on age." ***38 C.F.R. § 18.503***

**33.** "To satisfy the requirement of authentication or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." ***Fed.R.Evid. § 901(a)***

**34.** "Evidence that: **(A)** a document was recorded or filed in a public office as authorized by law; or **(B)** a purported public record or statement is from the office where items of this kind are kept." ***Fed.R.Evid. § 901(b)(7)(A-B)***

**35.** "The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: **Official Publications.**  A book,

pamphlets, or other publications purporting to be issued by a public authority."

*Fed.R.Evid. § 902(5)*

36. This request for Injunctive Relief is to restrain and enjoin Defendants *Akaka et al* from administering the Act and engaging in any activity subject to 38 C.F.R. § 18.511(a-b)(1-2)(c). It is appropriate to enjoin Defendants' *Akaka et al* conduct because they (Defendants) knew or had reason to believe that administering the Act would cause irreparable injury to Plaintiff and tens of thousands of veterans over age 60; and Plaintiff has shown that immediate and irreparable injury, loss, and damage will result to Plaintiff and veterans' access to these much-needed educational/economic benefits before the adverse party can be heard in opposition. More importantly, the Act purports to deprive Plaintiff and other veterans of the VA's already established statute, which declares that no veteran should be denied participation in said benefits because of his/her age – a clear violation of Plaintiff's due process. Since the Veteran Retraining and Assistance Program (VRAP) is scheduled to begin on July 1, 2012, it is highly likely that thousands of veterans will be excluded from these benefits. Moreover, this Act, which is unconstitutional, usurps 38 C.F.R. § 18.511(a-b)(1-2)(c) – in conflict with the due process clause of the Fifth Amendment.

37. **WHEREFORE**, Plaintiff respectfully prays for the following: that this Court finds that Defendants *Akaka et al* engaged in unlawfully administering the Act, subject to 38 C.F.R. § 18.511(a-b)(1-2)(c), and that injunctive relief is appropriate to bar Defendants Akaka et al from all activities related to the administration of the Act, scheduled to begin on July 1, 2012.

38. Whether violations of the Constitution afford a right of civil remedy against
Federal officers, in their individual capacities, was mentioned *in Bivens v. Six
Unknown Narcotics Agents, 403 U.S. 388 (1971)*.  Bivens alleged that six
employees of the U.S. Department of Justice had arrested him and searched his
home without a warrant or probable cause in violation of the 4th Amendment's
ban against unreasonable searches and seizures.  The Supreme Court upheld
the reasonableness of the complaint in the face of a motion to dismiss for failure
to state a cause of action.  They rejected the argument that a State Tort action
provided an adequate and exclusive judicial remedy.  The Court further
reasoned that a monetary damage for Bivens, injured by Federal officials and
agents was a means to compensate and vindicate Bivens' claim.  This case is
on point and extremely helpful to Plaintiff's cause, for Defendants, *Akaka et al*,
conspired (had a meeting of the minds) to limit the age requirements of the Act,
which unreasonably discriminated against and violated Plaintiff's due process
clause of 5th Amendment to the Constitution; and Defendants had the power to
prevent said conspiracy, but neglected and/or refused to do so, which served to
deprive Plaintiff of his due process through age discrimination.

39. Whether the Due Process Clause affords a right of civil remedy against a
Federal officer was mentioned in *Davis v. Passman, 442 U.S. 228 (1979)*.
Davis, a former employee of Louisiana Congressman Otto Passman, charged
Passman with violating her Fifth Amendment right to due process.  Prior to the
time of her filing, Passman wrote a note explaining that, even though he knew
Davis as an "...able, energetic, and a hard, hard worker," he preferred a man to

work in her position.  The Court of Appeals ruled that Davis had no civil

remedies under the Fifth Amendment due process requirement.  The U.S.

Supreme Court, relying upon *Bivens v. Six Unknown Federal Narcotics Agents*

*(1971)* and *Butz v. Economou (1978)*, reversed the lower court's conclusions.

Both cases affirmed a citizen's right to bring suit against federal officers for

constitutional violations.  In this case, Passman violated Davis's rights through

sexual discrimination.  The Court added that Passman's actions and words did

not constitute protected speech and that a damage remedy provided a ready

mechanism for remedial action.  "The equal protection component of the Fifth

Amendment's Due Process Clause confers on petitioner a federal constitutional

right to be free from gender discrimination that does not serve important

governmental objectives or is not substantially related to the achievement of

such objectives." Id at 442 U. S. 234-235. This case is on point and extremely

helpful to Plaintiff's cause, for Defendants *Akaka et al* agreed (95-0) to limit the

age and disability requirement of the Act; and administered the Act, (i.e., Solis,

Shinseki, Napolitano, and Panetta) respectively, knowledgeable of the VA's

regulations regarding age discrimination (38 C.F.R. § 18.511(a-b)(1-2)(c), which

was the moving force and cause-in-fact behind the deprivation of Plaintiff's

already established constitutional rights to due process through age

discrimination.   In sum, the Defendants *Akaka et al* conspired to deprive Plaintiff

of his due process afforded him in 38 C.F.R. § 18.511(a-b)(1-2)(c), which directs

the VA, a recipient of Federal funding, to not exclude veterans/Plaintiff from

benefits because of his age.  And, the age limitation neither serves important

governmental objectives nor is not substantially related to the achievement of such objectives.

40. Whether a warden and a prison guard, in their individual capacities, were entitled to qualified immunity was mentioned in *Gordon v. Scott, 6 S.W.3d 365 (Tex. App.- Beaumont 1999)*.  Gordon, an inmate, representing himself in pro per, appealed an order dismissing his constitutional claims, pursuant to 42 U.S.C. § 1983, against senior warden – Timothy West and guard Robert Vela. During a routine search of Gordon's cell, Vela knocked Gordon's typewriter to the floor, causing it to be damaged.  Gordon sued both West and Vela, in their official capacities, alleging deprivation of his equal protection to property interests.  West and Vela motioned to dismiss Gordon's claims, stating "Therefore, whenever a prisoner alleges a deprivation of his property by a TDCJ official, either intentionally or negligently, there is no cause of action under § 1983 as long as the state provides an adequate postdeprivation opportunity for redress." ***Id at 368***   The Court of Appeals reasoned, "To determine whether the trial court properly decided there was no arguable basis in the law for appellant's suit, we examine the types of relief and causes of action appellant pleaded in his petition to determine whether, as a matter of law, the petition stated a cause of action that would authorize relief.  In considering the record before us, we review and evaluate pro se pleadings by standards less stringent than those applied by lawyers.   ... Neither a state nor its officials acting in their official capacities are 'persons' under § 1983.  …Therefore, West and Vela are not proper parties to Gordon's § 1983 claim in their official capacities.  However, a § 1983 action will

lie against West and Vela in their personal or individual capacities.  West and Vela asserted that, to the extent they are sued in their individual capacities, they are entitled to official or qualified immunity.  Qualified immunity describes an affirmative defense for governmental employees sued in their individual capacities.  See *Harrison, 915 S.W.2d at 888*.  'The elements of the defense are: 1) performance of a discretionary function; 2) in good faith; and 3) within the scope of the employee's authority.'  Id. (citing <u>*Kassen v. Hatley*</u>, *887 S.W.2d 4, 9 (Tex. 1994)* Given the allegations in Gordon's petition, which we are bound to take as true in reviewing this dismissal, and the lack of evidence proving that West and Vela performed a discretionary function in good faith within their authority, we cannot conclude, without more, that their defense requires a dismissal." ***Id at 369***   "The trial court properly dismissed any claims against West and Vela in their official capacities.  To that extent, the judgment is affirmed.  The trial court erred in dismissing the claims against West and Vela in their personal capacities.  To that extent, the judgment is reversed and remanded to the trial court." ***Id at 370***   This case is on point and extremely helpful to Plaintiff's cause, for Plaintiff is suing the Defendants *Akaka et al* – not in their official, but individual capacities.  And, Defendants *Akaka et al* are not entitled to qualified immunity because they did not perform a  discretionary function, in good faith, and within the scope of the their authority.

41.  Whether Federal officers are shielded from liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, was mentioned in <u>*Harlow v.*</u>

*Fitzgerald, 102 S.Ct. 2727 (1982)*.  Two former Senior Presidential aides and advisors, Bryce Harlow and Alexander Butterfield (Petitioners), were previously denied the use of immunity as a defense in a civil case. The case involved a suit brought by the current Respondent, A. Ernest Fitzgerald, in which he stated that the petitioners had entered into a conspiracy to terminate Respondent, in violation of Respondent's constitutional and statutory rights.  "Respondent claims that Harlow joined the conspiracy in his role as the Presidential aide principally responsible for congressional relations. At the conclusion of discovery the supporting evidence was inferential.  The other evidence most supportive of Fitzgerald's claims consists of a recorded conversation in which the President later voiced a tentative recollection that Harlow was 'all for canning' Fitzgerald. …Harlow asserts he had no reason to believe that a conspiracy existed.  He contends that he took all of his actions in good faith. *Id at 2730*  As evidence that Butterfield participated in the conspiracy to conceal his unlawful discharge and prevent his reemployment, Fitzgerald cites communications between Butterfield and Haldeman in December 1969 and January 1970.  After the President had promised at a press conference to inquire into Fitzgerald's dismissal, Haldeman solicited Butterfield's recommendations.  In a subsequent memorandum, emphasizing the importance of 'loyalty,' Butterfield counseled against offering Fitzgerald another job in the administration at that time. …Together with their codefendant Richard Nixon, petitioners Harlow and Butterfield moved for summary judgment on February 12, 1980.  In denying the motion, the District Court upheld the legal sufficiency of Fitzgerald's Bivens claim

under the First Amendment and his 'inferred' statutory causes of action under 5 U.S.C. § 7211.  The court found that genuine issues of disputed fact remained for resolution at trial.  It also ruled that petitioners were not entitled to absolute immunity.  Independently of former President Nixon, petitioners invoked the collateral order doctrine and appealed the denial of their immunity defense to the Court of Appeals.  The Court of Appeals dismissed the appeal without opinion.  *Id at 2732*   Upon grant of certiorari The Supreme Court ruled that, among other considerations,  *"Referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury..."  Id at 2737*   The Supreme Court further reiterated that, "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.  ...If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."  *Id at 2738* The Supreme Court added, "We think it appropriate, however, to remand the case to the District Court for its consideration of this issue in light of this opinion.  Finally, Justice Brennan, with whom Justice Marshall, and Justice Blackmun join, concurred and stated, *"I agree with the substantive standard announced by the Court today, imposing liability when a public-official defendant 'knew or should*

have known' of the constitutional violative effect of his actions.'" *Id at 2739*
This case is on point and extremely helpful to Plaintiff's cause, for Defendants
*Akaka et al* agreed (95-0) to limit the age requirement of the Act; and
administered it, (i.e., Solis, Shinseki, Napolitano, and Panetta) respectively,
which was the moving force and cause-in-fact behind the deprivation, which they
knew, or should have known, would deprive Plaintiff's already established
constitutional rights to due process through age discrimination.

42. Whether inferential evidence was sufficient to support defendant's conviction for
conspiracy was mentioned in <u>U.S. v. Rodriquez-Velez</u>, 597 F.3d 32 (1st Cir.
2010). Defendant Eduardo Rodriquez-Velez and seven co-defendants were
charged with conspiracy to possess with intent to distribute 50 grams of cocaine.
"The jury found him guilty on the conspiracy count, and the district court, relying
in part on an information filed by the government in pursuance of 21 U.S.C. §
851(a), sentenced him to life imprisonment." *Id at 36*   On appeal, Defendant
argued that his motion for judgment of acquittal should have been granted for
lack of evidence based upon testimony from his seven co-defendants.  The
Court of Appeals affirmed the conviction, reasoning that "The essential elements
of the crime of conspiracy are 'the existence of a conspiracy, the defendant's
knowledge of the conspiracy, and the defendant's voluntary participation in the
conspiracy.' <u>United States v. Bristol-Martir</u>, 570 F.3d 29, 39 (1st Cir. 2009)  To
establish a defendant's willing participation, the government must show 'two
kinds of intent: intent to agree and intent to commit the substantive offense.' But
the government need not offer proof of an express agreement; criminal

conspiracies are by their very nature clandestine, and a tacit agreement inferred from the surrounding circumstances can – and often does – suffice to ground a finding of willing participation. *United States v. Boylan*, 898 F.2d 230, 243 (1st Cir. 1990) …To begin, the existence of a conspiracy was plainly inferable from the testimony recounted above…The appellant's knowledge of the conspiracy hardly can be doubted.  The knowledge was vividly illustrated by his conversations with Vega. …Finally, there was ample evidence from which a rational juror could find that the appellant willingly participated in the conspiracy." ***Id at 39***   This case is on point and extremely helpful to Plaintiff, for Defendant *Akaka et al* discussed (had a meeting of the minds) and voted (95-0) on every aspect of the Act, to include the requirements that excluded veterans over age 60, which implies knowledge, willingness, and participation.  And, here, Plaintiff has used inferential evidence to reach these conclusions.  Hence, a reasonable jury could infer that Defendants *Akaka et al* participated in a conspiracy, which deprived Plaintiff's due process of the law through age discrimination.

43. Whether evidence acquired from a government website constituted self-authenticating admissible evidence was mentioned in *Williams v. Long*, 585 F.Supp.2d 679 (2008).  "Employees, on behalf of themselves and others similarly situated, filed suit alleging their employer had failed to compensate them at minimum wage and provide overtime pay in violation of Fair Labor Standards Act (FLSA), as well as claims for violation of Baltimore's Wage and Hour Law and Maryland's Wage Payment and Collection Law.  Employer counterclaimed for breach of contract, breach of fiduciary duty, and invasion of

privacy.  The District Court, J. Frederick Motz, J., *558 F.Supp.2d 601*, granted

employees motion to dismiss counterclaim.  Employees moved to conditionally

certify collective action.  …The District Court, Paul W. Grimm, United States

Magistrate Judge, held that: …2) exhibits in form of printed webpages from

websites suggesting there were other claimants who might decide to join suit

were self-authenticating…" ***Id at 679***  The Court, relying upon: **a)** "*Hispanic*

*Broadcasting Corp. v. Education Media Foundation, No. CV027134CAS*

*(AJWX), 2003 WL 22867633 (C.D.Cal. Oct. 30, 2003)*, where the court noted

how 'exhibits which consist of records from government websites, such as the

FCC website, are self-authenticating.  See Fed.R.Evid. 902(1), (5).'" ***Id at 687***

**b)** *Shell Oil Co. v. Franco, No. CV 03-8846 NM (PJWx), 2004 WL 5615656*

*(C.D.Cal. May 18, 2004*; and **c)** *U.S. EEOC v. E.I. DuPont de Nemours & Co.,*

*No. Cic.A. 03-165, 2004 WL 2347559 (E.D.La. Oct. 18, 2004)*, ***Id at 688***  ruled

that "First and foremost, the Maryland judiciary is a branch of the Maryland State

Government; therefore, any online 'official publication' issued by the Maryland

Judiciary would be self-authenticating.  Second, the URL on the top of the

printed webpage identifies that the results are in fact from the website.  Third,

the first page features a caption, stating, 'Maryland Judiciary Case Search

Results,' and the next page states, 'District Court of Maryland.'  Accordingly,

there is no doubt that these results were published on the website of a public

authority.  Thus, they are self-authenticating." ***Id at 689***  This case is on point

and extremely helpful to Plaintiff's cause, for Plaintiff presented electronically

stored information (ESI) from a webpage printout sufficiently authenticated

where (1) printout contained the addresses: http://veterans.house.gov/vow and

http://www.senate.gov/legislative/LIS/roll_call_lists/roll_call_vote_cfm.cfm?congr

ess=112&session=1&vote=00204 from which it was printed, (2) printout

contained the date on which it was printed, (3) court can access the website and

verify that the page exists, and (4) webpage was maintained by a government

agency and thus was self-authenticating pursuant to Fed.R.Evid. 902(5).  More

specifically, the above-mentioned websites chronicle Defendant *Akaka et al's*

agreement (meeting of the minds) to limit the age requirement, which served to

deprive Plaintiff's due process to VA retraining and assistance benefits through

age discrimination.

44.  Whether a jury is permitted to assess punitive damages in a § 1983 action,

when the defendant's conduct involves reckless or callous indifference to the

plaintiff's federally protected rights, as well as when it is motivated by evil motive

or intent, was mentioned in *Smith v. Wade, 103 S.Ct. 1625 (1983)*.  "The

petitioner, William H. Smith, is a guard at Algoa Reformatory, a unit of the

Missouri Division of Correction for youthful offenders.  The respondent, Daniel R.

Wade, was assigned to Algoa as an inmate in 1976.  …Because of the

disciplinary violations during his stay in protective custody, Wade was given a

short term in punitive segregation and then transferred to administrative

segregation.  On the evening of Wade's first day in administrative segregation,

he was placed in a cell with another inmate.  Later, when Smith came on duty in

Wade's dormitory, he placed a third inmate in Wade's cell.  According to Wade's

testimony, his cellmates harassed, beat, and sexually assaulted him." ***Id at***

**1627**  Wade sued Smith and four other guards, alleging his Eighth Amendment rights had been violated.  During the trial, the District Judge entered a directed verdict for two of the defendants.  He instructed the jury that Wade could make out an Eighth Amendment violation only by showing 'physical abuse of such base, inhumane and barbaric proportions as to shock the sensibilities.' Tr. 639. Further, because of Smith's qualified immunity as a prison guard, see *Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978)*, the judge instructed the jury that Wade could recover only if the defendants were guilty of 'gross negligence' (defined as 'a callous indifference or a thoughtless disregard for the consequences of one's act or failure to act') or 'egregious failure to protect' (defined as 'a flagrant or remarkably bad failure to protect') Wade.  Tr. 641-642.  He reiterated that Wade could not recover on a showing of simple negligence." **Id at 1628**   In the District Court, the jury found Smith liable, awarding Wade $25,000 in compensatory damages and $5,000 in punitive damages.  The Court of Appeals affirmed.  On appeal to the U.S. Supreme Court, "Smith correctly conceded that 'punitive damages are available in a 'proper' § 1983 action...' *Carlson v. Green, 446 U.S. 14, 22, 100 S.Ct. 1468, 1473, 64 L.Ed.2d 15 (1980)*." **Id at 1629**  This case is on point and extremely helpful to Plaintiff, for Defendants *Akaka et al*, acted with callous indifference, thoughtless disregard for the consequences of their actions, and egregious failure to protect Plaintiff's already established rights to due process of the laws.

45. At the above-mentioned place and time, Defendants *Akaka et al*, acting in concert with one another, and by way of conspiracy among them, agreed upon,

and administered a law (Act), respectively, which was the moving force that deprived Plaintiff of due process to be free from discrimination because of his age. Furthermore, Defendants *Akaka et al* have caused Plaintiff to be denied due process of law and to be deprived of equal privileges and immunities under the laws, on account of Plaintiff's age, by subjecting him to legally unjustified age discrimination.

46. The Defendants had knowledge of the conspiracy to violate Plaintiff's civil rights and of the violations committed, and had power to prevent these wrongs, but neglected or refused to do so in violation of 42 U.S.C. § 1986.

47. As a proximate result of Defendants', and each of them, malicious conduct, Plaintiff sustained emotional and psychological injuries to include humiliation, and indignation, all of which have caused, and continue to cause Plaintiff great mental anguish and suffering.

## SECOND CAUSE OF ACTION
**(Bivens claim of Intentional Infliction of Emotional Distress (mental anguish) in Furtherance of Conspiracy, Negligence, and Deprivation of Due Process of Law against Akaka, et al. (42 U.S.C. §§ 1985(3) 1983, 1986, and 1988)**

48. Plaintiff herein hereby refers to paragraphs 1 through 47 and each of them and incorporates same herein as though fully realleged.

49. On **May 23, 2012**, Plaintiff, anguished, humiliated, degraded, frustrated, severely disappointed, embarrassed, and shamefully locked out, and distressed, immediately checked into the VA Outpatient Clinic, in Corpus Christi, Texas, for psychiatric counseling and medication to calm his fears and anxiety, brought on by actions of the aforementioned Defendants. [*TAB 8*]

**50.** "Outrageous Conduct Causing Severe Emotional Distress (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm…" *Rest. 2d Torts, § 46*

51. "To prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused her emotional distress; and (4) the emotional distress was severe." <u>Kroger Tex. Ltd. P'ship v. Suberu</u>, 216 S.W.3d 788, 796 (Tex. 2006)

52. Whether a civil rights claim permits the award of compensatory damages for mental anguish suffered as a result of the deprivation of constitutional rights was mentioned in <u>Covington v. Beaumont Ind. School Dist.(BISD)</u>, 738 F.Supp. 1041 (E.D.Tex. 1990)   Covington (Caucasian) and Elliff (Hispanic) were assistant coaches for the BISD.  "In August 1988, a local newspaper published an article highlighting the absence of black coaches from the BISD high school varsity football teams.  In response, BISD administration removed the plaintiffs, who were the two non-black assistant varsity coaches with the least seniority at the West Brook campus, from varsity coaching and reassigned them to sophomore coaching.  This created two assistant varsity coaching vacancies, and BISD immediately assigned two black coaches to these positions.  Although the two black coaches were very very satisfactory in the performance of their duties, they were assigned because of race, and the plaintiffs were removed because of

race." *Id at 1042* "Judge Schell has ruled that BISD took these actions as part of a policy of job assignment based on race which violated the plaintiffs' rights to equal protection.  The plaintiffs were reassigned to sophomore coaching positions, but did not suffer any actual loss of wages, as they were still paid according to their contracts.  Judge Schell has awarded the injunctive relief of reinstatement to Covington, and Elliff withdrew his request for reinstatement. Consequently, a nominal award of one dollar to each plaintiff is appropriate as actual damages suffered because of the defendant's deprivation of the plaintiff's constitutional rights.  A civil rights claim, however, also permits the award of compensatory damages for mental anguish suffered as a result of the deprivation of constitutional rights.  *Memphis Community School District, et al. v. Stachura*, *474 U.S. 918, 106 S.Ct. 245, 88 L.Ed.2d 254 (1986)*.  The defendant's actions toward these plaintiffs were based solely on the plaintiffs' race.  The plaintiffs have adequately shown that as a result of the defendant's racially discriminatory actions, they suffered mental anguish and humiliation. Accordingly, each plaintiff is awarded five thousand dollars in compensatory damages. ...This court feels compelled, however, to decry BISD's flagrant disregard of the law in its implementation of this racially discriminatory policy. ..." *Id at 1043*  This case is on point and extremely helpful to Plaintiff's cause, for Defendants *Akaka et al* enacted and administered a policy that was discriminatory (age), which was the moving force that deprived Plaintiff's due process; and caused Plaintiff to suffer mental anguish and humiliation.

53. Defendants knew or should have known that by excluding Plaintiff – a veteran older than 60 years of age inevitably would cause great mental anguish and severe emotional distress.

54. Defendants acted intentionally, maliciously or grossly reckless in conspiring to limit the age requirement, as they knew or should have known that the requirements would exacerbate Plaintiff's mental anguish.

55. But for Defendants' *Akaka et al* proximate resulting actions under the circumstances described above, Plaintiff would not have suffered mental anguish.

56. In the case at bar, Defendants' conduct, when considered in its totality and not in isolation, is more than sufficient to show: 1) outrageous conduct by defendants; 2) intention to cause or reckless disregard of the probability of causing emotional distress; 3) severe emotional suffering; and 4) actual and proximate causation of emotional distress.

57. At the above-mentioned place and time, Defendants, and each of them, willfully, knowingly, and intentionally conspired to cause Plaintiff; and proximately caused Plaintiff intentional infliction of emotional distress (mental anguish).

58. As a proximate result of Defendants', and each of them, malicious conduct, Plaintiff sustained emotional and psychological injuries, humiliation, indignation, and increased stress, all of which have caused, and continue to cause Plaintiff great mental pain and suffering.

## FIRST CAUSE OF ACTION
**(Bivens claim of Conspiracy to Intentionally Deprive Plaintiff's Due Process of the Law and Neglect to Prevent Conspiracy as it Relates to VA Benefits (through Age discrimination) against Akaka, et al (42 U.S.C. §§ 1983, 1985(3), 1986, and 1988)**

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. **For general damages according to proof;**

2. **For injunctive relief according to proof;**

3. **For declaration that the Vow to Hire Heroes Act is unconstitutional to the extent that it deprived Plaintiff and other veterans of Due Process in VA Retraining and Assistance benefits;**

4. **For pain and suffering (non-physical);**

5. **For punitive damages;**

6. **For attorney's fees; and**

7. **For whatever relief the Court sees fit.**

## SECOND CAUSE OF ACTION
**(Bivens claim of Intentional Infliction of Emotional Distress (mental anguish) in Furtherance of Conspiracy, Negligence, and Deprivation of Procedural Due Process against Akaka, et al.  (42 U.S.C. §§ 1985(3) 1983, 1986, and 1988)**

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. **For general damages according to proof;**

2. **For compensatory damages of mental anguish (non-physical);**

3. **For prejudgment interest on damages;**

4. **Punitive damages;**

5. **For attorney's fees; and**

6. **For whatever relief the Court sees fit.**

Respectfully submitted.

Dated this 1st day of June 2012

*E. K. Wade*

E. K. Wade (Pro Se)
Attorney for Plaintiff
2802 Cimarron Blvd., #343
Corpus Christi, TX 78414
(925) 323-1578

**VERIFICATION**

I, <u>E. K. Wade</u>, am the Plaintiff in the above-entitled action.  I have read the

foregoing complaint and know the contents thereof.  The same is true of my

own knowledge, except as to those matters, which are therein alleged on

information and belief, and as those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of Texas that the

foregoing is true and correct.

Dated this 1st day of June 2012

*E. K. Wade*

**E. K. Wade (Pro Se)**
**Attorney for Plaintiff**
**2802 Cimarron Blvd., #343**
**Corpus Christi, TX  78414**
**(925) 323-1578**

**DEPARTMENT OF VETERANS AFFAIRS**
Houston Regional Office
6900 Almeda Road.
Houston Texas  77030

August 8, 2011

ELROY KASHKA WADE
346 BAKER DR
CORPUS CHRISTI TX 78408

In Reply Refer To:  362/284
C 260 03 573
WADE, Elroy

Dear Mr. Wade:

This letter from the Department of Veterans Affairs certifies that Elroy Wade is receiving service-connected disability compensation.

The current benefit paid is as follows:

| | |
|---|---|
| Gross Benefit Amount | $2,673.00/mo. |
| Net Amount Paid | $2,673.00/mo. |
| Effective Date | August 1, 2006 |
| Percent Disability | 100% |

If you reside in the continental United States, Alaska, Hawaii, or Puerto Rico, you may contact VA with questions by calling our toll-free number 1-800-827-1000 (for hearing impaired TDD 1-800-829-4833) or contact us online (https://iris.va.gov).

Sincerely yours,

*E. P. Dufrene*
Manager, Veterans Service Center

nra

U.S. Senate: Legislation & Records Home > Votes > Roll Call Vote                    Page 1 of 3



SENATORS | COMMITTEES | LEGISLATION & RECORDS | ART & HISTORY | VISITORS | REFERENCE

- ▼ Votes
- ▸ Nominations
- ▸ Calendars & Schedules
- ▸ Congressional Record
- ▸ Treaties
- ▸ Bills & Resolutions
- ▸ Appropriations Bills
- ▸ Public Disclosure
- ▸ Legislative Process
- ▸ Active Legislation

**U.S. Senate Roll Call Votes 112th Congress - 1st Session**                    XML

as compiled through Senate LIS by the Senate Bill Clerk under the direction of the Secretary of the Senate

**Vote Summary**

**Question:** On Passage of the Bill(H.R. 674 As Amended )

| | | |
|---|---|---|
| **Vote Number:** | 204 | **Vote Date:** November 10, 2011, 02:33 PM |
| **Required For Majority:** | 1/2 | **Vote Result:** Bill Passed |

**Measure Number:** H.R. 674 (A bill to amend the Internal Revenue Code of 1986 to repeal the imposition of 3 percent withholding on certain payments made to vendors by government entities. )

**Measure Title:** To amend the Internal Revenue Code of 1986 to repeal the imposition of 3 percent withholding on certain payments made to vendors by government entities, to modify the calculation of modified adjusted gross income for purposes of determining eligibility for certain healthcare-related programs, and for other purposes.

**Vote Counts:**

| | |
|---|---|
| YEAs | 95 |
| NAYs | 0 |
| Present | 1 |
| Not Voting | 4 |

Vote Summary     By Senator Name     By Vote Position     By Home State

**Alphabetical by Senator Name**

| | | |
|---|---|---|
| Akaka (D-HI), **Yea** | Gillibrand (D-NY), **Yea** | Moran (R-KS), **Yea** |
| Alexander (R-TN), **Yea** | Graham (R-SC), **Yea** | Murkowski (R-AK), **Yea** |
| Ayotte (R-NH), **Yea** | Grassley (R-IA), **Yea** | Murray (D-WA), **Yea** |
| Barrasso (R-WY), **Yea** | Hagan (D-NC), **Not** | Nelson (D-FL), **Yea** |
| Baucus (D-MT), **Not Voting** | Harkin (D-IA), **Yea** | Nelson (D-NE), **Yea** |
| Begich (D-AK), **Yea** | Hatch (R-UT), **Yea** | Paul (R-KY), **Yea** |
| Bennet (D-CO), **Yea** | Heller (R-NV), **Yea** | Portman (R-OH), **Yea** |
| Bingaman (D-NM), **Yea** | Hoeven (R-ND), **Yea** | Pryor (D-AR), **Yea** |
| Blumenthal (D-CT), **Yea** | Hutchison (R-TX), **Yea** | Reed (D-RI), **Yea** |
| Blunt (R-MO), **Yea** | Inhofe (R-OK), **Yea** | Reid (D-NV), **Yea** |
| Boozman (R-AR), **Yea** | Inouye (D-HI), **Not Voting** | Risch (R-ID), **Yea** |
| Boxer (D-CA), **Yea** | Isakson (R-GA), **Yea** | Roberts (R-KS), **Yea** |
| Brown (D-OH), **Yea** | Johanns (R-NE), **Yea** | Rockefeller (D-WV), **Yea** |
| Brown (R-MA), **Yea** | Johnson (D-SD), **Yea** | Rubio (R-FL), **Yea** |
| Burr (R-NC), **Yea** | Johnson (R-WI), **Yea** | Sanders (I-VT), **Yea** |
| Cantwell (D-WA), **Yea** | Kerry (D-MA), **Yea** | Schumer (D-NY), **Yea** |
| Cardin (D-MD), **Yea** | Kirk (R-IL), **Yea** | Sessions (R-AL), **Not Voting** |
| Carper (D-DE), **Yea** | Klobuchar (D-MN), **Yea** | Shaheen (D-NH), **Yea** |
| Casey (D-PA), **Yea** | Kohl (D-WI), **Yea** | Shelby (R-AL), **Yea** |
| Chambliss (R-GA), **Yea** | Kyl (R-AZ), **Yea** | Snowe (R-ME), **Present** |
| Coats (R-IN), **Yea** | Landrieu (D-LA), **Yea** | Stabenow (D-MI), **Yea** |
| Coburn (R-OK), **Yea** | Lautenberg (D-NJ), **Yea** | Tester (D-MT), **Yea** |
| Cochran (R-MS), **Yea** | Leahy (D-VT), **Yea** | Thune (R-SD), **Yea** |
| Collins (R-ME), **Yea** | Lee (R-UT), **Yea** | Toomey (R-PA), **Yea** |
| Conrad (D-ND), **Yea** | Levin (D-MI), **Yea** | Udall (D-CO), **Yea** |
| Coons (D-DE), **Yea** | Lieberman (ID-CT), **Yea** | Udall (D-NM), **Yea** |
| Corker (R-TN), **Yea** | Lugar (R-IN), **Yea** | Vitter (R-LA), **Yea** |
| Cornyn (R-TX), **Yea** | Manchin (D-WV), **Yea** | Warner (D-VA), **Yea** |
| Crapo (R-ID), **Yea** | McCain (R-AZ), **Not Voting** | Webb (D-VA), **Yea** |
| DeMint (R-SC), **Yea** | McCaskill (D-MO), **Yea** | Whitehouse (D-RI), **Yea** |
| Durbin (D-IL), **Yea** | McConnell (R-KY), **Yea** | Wicker (R-MS), **Yea** |
| Enzi (R-WY), **Yea** | | Wyden (D-OR), **Yea** |
| Feinstein (D-CA), **Yea** | | |
| Franken (D-MN), **Yea** | | |

**Find Votes**

Find out about congressional voting with this How to guide.

**Find Bills**

Use this guide to help you find the full text of recent bills and resolutions on the Web, or order them from the Senate or House Document Rooms, or you can find them in a library.

**Find Bills in THOMAS**

You can access legislative information, by bill number or key words, from the THOMAS Web site. Information from the present back to the 93rd Congress (1973) is available on THOMAS.

**Virtual Reference Desk**

The Votes page of the Virtual Reference Desk provides voting procedure information, research guides, and essays about historic votes.

**Vote Statistics**

The Votes category on the Statistics page features facts and figures about votes made by Senators.

Menendez (D-NJ), Yea
Merkley (D-OR), Yea
Mikulski (D-MD), Yea

Vote Summary     By Senator Name     By Vote Position     By Home State

**Grouped By Vote Position**

### YEAs ---95

| | | |
|---|---|---|
| Akaka (D-HI) | Feinstein (D-CA) | Mikulski (D-MD) |
| Alexander (R-TN) | Franken (D-MN) | Moran (R-KS) |
| Ayotte (R-NH) | Gillibrand (D-NY) | Murkowski (R-AK) |
| Barrasso (R-WY) | Graham (R-SC) | Murray (D-WA) |
| Baucus (D-MT) | Grassley (R-IA) | Nelson (D-FL) |
| Begich (D-AK) | Harkin (D-IA) | Nelson (D-NE) |
| Bennet (D-CO) | Hatch (R-UT) | Paul (R-KY) |
| Bingaman (D-NM) | Heller (R-NV) | Portman (R-OH) |
| Blumenthal (D-CT) | Hoeven (R-ND) | Pryor (D-AR) |
| Blunt (R-MO) | Hutchison (R-TX) | Reed (D-RI) |
| Boozman (R-AR) | Inhofe (R-OK) | Reid (D-NV) |
| Boxer (D-CA) | Isakson (R-GA) | Risch (R-ID) |
| Brown (D-OH) | Johanns (R-NE) | Roberts (R-KS) |
| Brown (R-MA) | Johnson (D-SD) | Rockefeller (D-WV) |
| Burr (R-NC) | Johnson (R-WI) | Rubio (R-FL) |
| Cantwell (D-WA) | Kerry (D-MA) | Sanders (I-VT) |
| Cardin (D-MD) | Kirk (R-IL) | Schumer (D-NY) |
| Carper (D-DE) | Klobuchar (D-MN) | Shaheen (D-NH) |
| Casey (D-PA) | Kohl (D-WI) | Shelby (R-AL) |
| Chambliss (R-GA) | Kyl (R-AZ) | Stabenow (D-MI) |
| Coats (R-IN) | Landrieu (D-LA) | Tester (D-MT) |
| Coburn (R-OK) | Lautenberg (D-NJ) | Thune (R-SD) |
| Cochran (R-MS) | Leahy (D-VT) | Toomey (R-PA) |
| Collins (R-ME) | Lee (R-UT) | Udall (D-CO) |
| Conrad (D-ND) | Levin (D-MI) | Udall (D-NM) |
| Coons (D-DE) | Lieberman (ID-CT) | Vitter (R-LA) |
| Corker (R-TN) | Lugar (R-IN) | Warner (D-VA) |
| Cornyn (R-TX) | Manchin (D-WV) | Webb (D-VA) |
| Crapo (R-ID) | McCaskill (D-MO) | Whitehouse (D-RI) |
| DeMint (R-SC) | McConnell (R-KY) | Wicker (R-MS) |
| Durbin (D-IL) | Menendez (D-NJ) | Wyden (D-OR) |
| Enzi (R-WY) | Merkley (D-OR) | |

### Present - 1

Snowe (R-ME)

### Not Voting - 4

| | |
|---|---|
| Hagan (D-NC) | McCain (R-AZ) |
| Inouye (D-HI) | Sessions (R-AL) |

Vote Summary     By Senator Name     By Vote Position     By Home State

**Grouped by Home State**

| | | |
|---|---|---|
| **Alabama:** | Sessions (R-AL), **Not Voting** | Shelby (R-AL), **Yea** |
| **Alaska:** | Begich (D-AK), **Yea** | Murkowski (R-AK), **Yea** |
| **Arizona:** | Kyl (R-AZ), **Yea** | McCain (R-AZ), **Not Voting** |
| **Arkansas:** | Boozman (R-AR), **Yea** | Pryor (D-AR), **Yea** |
| **California:** | Boxer (D-CA), **Yea** | Feinstein (D-CA), **Yea** |
| **Colorado:** | Bennet (D-CO), **Yea** | Udall (D-CO), **Yea** |
| **Connecticut:** | Blumenthal (D-CT), **Yea** | Lieberman (ID-CT), **Yea** |
| **Delaware:** | Carper (D-DE), **Yea** | Coons (D-DE), **Yea** |
| **Florida:** | Nelson (D-FL), **Yea** | Rubio (R-FL), **Yea** |
| **Georgia:** | Chambliss (R-GA), **Yea** | Isakson (R-GA), **Yea** |
| **Hawaii:** | Akaka (D-HI), **Yea** | Inouye (D-HI), **Not Voting** |
| **Idaho:** | Crapo (R-ID), **Yea** | Risch (R-ID), **Yea** |
| **Illinois:** | Durbin (D-IL), **Yea** | Kirk (R-IL), **Yea** |
| **Indiana:** | Coats (R-IN), **Yea** | Lugar (R-IN), **Yea** |
| **Iowa:** | Grassley (R-IA), **Yea** | Harkin (D-IA), **Yea** |
| **Kansas:** | Moran (R-KS), **Yea** | Roberts (R-KS), **Yea** |
| **Kentucky:** | McConnell (R-KY), **Yea** | Paul (R-KY), **Yea** |
| **Louisiana:** | Landrieu (D-LA), **Yea** | Vitter (R-LA), **Yea** |

| | | |
|---|---|---|
| **Maine:** | Collins (R-ME), **Yea** | Snowe (R-ME), **Present** |
| **Maryland:** | Cardin (D-MD), **Yea** | Mikulski (D-MD), **Yea** |
| **Massachusetts:** | Brown (R-MA), **Yea** | Kerry (D-MA), **Yea** |
| **Michigan:** | Levin (D-MI), **Yea** | Stabenow (D-MI), **Yea** |
| **Minnesota:** | Franken (D-MN), **Yea** | Klobuchar (D-MN), **Yea** |
| **Mississippi:** | Cochran (R-MS), **Yea** | Wicker (R-MS), **Yea** |
| **Missouri:** | Blunt (R-MO), **Yea** | McCaskill (D-MO), **Yea** |
| **Montana:** | Baucus (D-MT), **Yea** | Tester (D-MT), **Yea** |
| **Nebraska:** | Johanns (R-NE), **Yea** | Nelson (D-NE), **Yea** |
| **Nevada:** | Heller (R-NV), **Yea** | Reid (D-NV), **Yea** |
| **New Hampshire:** | Ayotte (R-NH), **Yea** | Shaheen (D-NH), **Yea** |
| **New Jersey:** | Lautenberg (D-NJ), **Yea** | Menendez (D-NJ), **Yea** |
| **New Mexico:** | Bingaman (D-NM), **Yea** | Udall (D-NM), **Yea** |
| **New York:** | Gillibrand (D-NY), **Yea** | Schumer (D-NY), **Yea** |
| **North Carolina:** | Burr (R-NC), **Yea** | Hagan (D-NC), **Not Voting** |
| **North Dakota:** | Conrad (D-ND), **Yea** | Hoeven (R-ND), **Yea** |
| **Ohio:** | Brown (D-OH), **Yea** | Portman (R-OH), **Yea** |
| **Oklahoma:** | Coburn (R-OK), **Yea** | Inhofe (R-OK), **Yea** |
| **Oregon:** | Merkley (D-OR), **Yea** | Wyden (D-OR), **Yea** |
| **Pennsylvania:** | Casey (D-PA), **Yea** | Toomey (R-PA), **Yea** |
| **Rhode Island:** | Reed (D-RI), **Yea** | Whitehouse (D-RI), **Yea** |
| **South Carolina:** | DeMint (R-SC), **Yea** | Graham (R-SC), **Yea** |
| **South Dakota:** | Johnson (D-SD), **Yea** | Thune (R-SD), **Yea** |
| **Tennessee:** | Alexander (R-TN), **Yea** | Corker (R-TN), **Yea** |
| **Texas:** | Cornyn (R-TX), **Yea** | Hutchison (R-TX), **Yea** |
| **Utah:** | Hatch (R-UT), **Yea** | Lee (R-UT), **Yea** |
| **Vermont:** | Leahy (D-VT), **Yea** | Sanders (I-VT), **Yea** |
| **Virginia:** | Warner (D-VA), **Yea** | Webb (D-VA), **Yea** |
| **Washington:** | Cantwell (D-WA), **Yea** | Murray (D-WA), **Yea** |
| **West Virginia:** | Manchin (D-WV), **Yea** | Rockefeller (D-WV), **Yea** |
| **Wisconsin:** | Johnson (R-WI), **Yea** | Kohl (D-WI), **Yea** |
| **Wyoming:** | Barrasso (R-WY), **Yea** | Enzi (R-WY), **Yea** |

<u>Vote Summary</u>    <u>By Senator Name</u>    <u>By Vote Position</u>    <u>By Home State</u>

SENATORS   COMMITTEES   LEGISLATION & RECORDS   ART & HISTORY   VISITORS   REFERENCE

## UNITED STATES
# DEPARTMENT OF VETERANS AFFAIRS

## VOW TO HIRE HEROES ACT 2011 – VETERANS RETRAINING ASSISTANCE PROGRAM

**VOW Links**

VOW Homepage

Voc Rehabilitation

VRAP

Seamless Transition

For Employers

### Veterans Retraining Assistance Program (VRAP)

Congress passed, and the President has signed into law, the VOW to Hire Heroes Act of 2011. Included in this new law is the Veterans Retraining Assistance Program (VRAP). VRAP offers up to 12 months of training assistance to unemployed Veterans. The Department of Veteran Affairs (VA) and the Department of Labor (DOL) are working together to roll out this new program on July 1, 2012.

The VRAP offers 12 months of training assistance to Veterans who:

- Are at least 35 but no more than 60 years old
- Are unemployed
- Received an other than dishonorable discharge
- Are not be eligible for any other VA education benefit program (e.g.: the Post-9/11 GI Bill, Montgomery GI Bill, Vocational Rehabilitation and Employment Assistance)
- Are not in receipt of VA compensation due to unemployability
- Are not enrolled in a federal or state job training program

The program is limited to 45,000 participants from July 1, 2012, through September 30, 2012, and 54,000 participants from October 1, 2012, through March 31, 2014. Participants may receive up to 12 months of assistance equal to the monthly full-time payment rate under the Montgomery GI Bill–Active Duty program (currently $1,473 per month). DOL will offer employment assistance to every Veteran who participates upon completion of the program.

Participants must be enrolled in a VA approved program of education offered by a community college or technical school. The program must lead to an Associate Degree, Non-College Degree, or a Certificate, and train the Veteran for a high demand occupation.

### High Demand Jobs

VRAP will provide training for programs of education that lead to a high demand occupation, as determined by the Department of Labor. Click here to see a listing of high demand occupations.

### VRAP Applications Are Open

We are accepting VRAP applications now. Please visit eBenefits to apply. Remember, to complete the application, you will need to know your direct deposit information (bank routing number and account number), the name and location of your school, the program you wish to pursue, and the applicable high demand occupation.

**Resources**

VRAP Q&A

VOW Fact Sheet

VRAP Fact Sheet

VRAP FAQS

High Demand Jobs

U.S. Department of Veterans Affairs - 810 Vermont Avenue, NW - Washington, DC 20420

Reviewed/Updated Date: May 21, 2012

  Sign Up for Committee Updates   *Enter email addr*   Stay connected with the Committee      

Home

# VOW To Hire Heroes Act of 2011

### *Comprehensive Legislation to End Veteran Unemployment*

According to the Labor Department, there are 3.4 million job openings right now in the United States. Yet, many employers are finding that workers *do not have the skills or training* they need to qualify for them.

There are nearly 900,000 unemployed veterans in the United States–a staggering figure. The latest Department of Labor unemployment report shows that in October 2011, the average unemployment rate among all veterans was 7.7% and 12.1% for veterans returning from Iraq and Afghanistan. Equally troubling, veterans between the ages of 35 and 64, the group with the highest financial obligations and the fewest available VA education and training options, continue to make up nearly two-thirds of all unemployed veterans. Overall, nearly one in twelve of our nation's heroes can't find a job to support their family, don't have an income that provides stability, and don't have work that provides them with the confidence and pride that is so critical to their transition home.

The **"VOW to Hire Heroes Act"** is bipartisan, bicameral, comprehensive legislation that would lower the rate of unemployment among our nation's veterans. This bill combines provisions of Chairman Miller's Veterans Opportunity to Work (VOW) Act - which passed the House on October 12, 2011 - (H.R. 2433; Report #112-242), and Chairman Murray's Hiring Heroes Act (S. 951; Report #112-36), and veterans' tax credits into a comprehensive jobs package that will aggressively attack the unacceptably high rate of veterans' unemployment by:

- *Expanding Education & Training*: To begin moving veterans out of the unemployment lines, the VOW to Hire Heroes Act of 2011 provides nearly 100,000 unemployed veterans of past

eras and wars with up to 1-year of additional Montgomery GI Bill benefits to qualify for jobs in high-demand sectors, from trucking to technology. It also provides disabled veterans who have exhausted their unemployment benefits up to 1-year of additional VA Vocational Rehabilitation and Employment benefits.

• *Improving the Transition Assistance Program (TAP)*: Too many service members don't participate in TAP and enter civilian life without a basic understanding of how to compete in a tight job market. Therefore, the VOW to Hire Heroes Act makes TAP mandatory for most service members transitioning to civilian status, upgrades career counseling options, and job hunting skills, as well as ensures the program is tailored to individuals and the 21st Century job market.

• *Facilitating Seamless Transition:* Getting a civil service job can often take months which often forces a veteran to seek unemployment benefits. To shorten the time to start a federal job after discharge, this bill allows service members to begin the federal employment process by acquiring veterans preference status <u>prior to</u> separation.  This facilitates a more seamless transition to civil service jobs at VA, or the many other federal agencies that would benefit from hiring our veterans.

• *Translating Military Skills and Training:* This bill also requires the Department of Labor to take a hard look at how to translate military skills and training to civilian sector jobs, and will work to make it easier to get the licenses and certification our veterans need.

• *Veterans Tax Credits:* The VOW to Hire Heroes Act provides tax credits for hiring veterans and disabled veterans who are out of work.

**Furthermore, the VOW to Hire Heroes Act is completely paid for and does not increase the deficit.**

*Learn more:*

Joint Press Release by Chairman Miller and Chairman Murray

Read the text of the bill here

The Veterans Opportunity to Work Act

Case 2:12-cv-00179     Document 1     Filed on 06/01/12 in TXSD     Page 39 of 62

The Veterans Employment Summit of 2011

## *What Is The VOW To Hire Heroes Act?*

| | The VOW Act (HR 2433) – Rep. Miller (R-FL) | The Hiring our Heroes Act (S. 951) – Sen. Murray (D-WA) | The American Jobs Act – President Obama |
|---|---|---|---|
| Mandates participation in the Transition Assistance Program (TAP) | ✓ | ✓ | |
| Allows DoL to provide TAP through contract instructors | ✓ | | |
| Re-Training Program for nearly 100,000 veterans of past conflicts in high-demand fields | ✓ | | |
| Improves TAP | ✓ | ✓ | |
| Requires testing for federally funded, state employees who find jobs for veterans | ✓ | | |
| Offers Vocational Rehabilitation for disabled veterans not eligible for unemployment compensation | | ✓ | |

| | | |
|---|---|---|
| Sets performance metrics for federally funded, state employees who find jobs for veterans | ✓ | |
| Limits the duties of federally funded, state employees tasked with finding jobs for veterans to assisting veterans | ✓ | |
| Authorizes job mentoring program with Non Profits | | ✓ |
| Clarifies priority of service for veterans in training offered by DoL | ✓ | |
| Reauthorizes study to review licensing & credentialing standards | ✓ | ✓ |
| Extends authority for wounded servicemembers to use Vocational Rehabilitation services | | ✓ |
| Provides tools for service members to apply for federal positions while on active duty. | | ✓ |

Authorizes pilot to provide federal temporary work experience to servicemembers on terminal leave      ✓

Improves Reemployment Rights for Guard and Reservists under USERRA      ✓

Provides a tax credit for hiring veterans      $5,600/veteran
$9,600/disabled
veteran

MCG11406                                                                S.L.C.

AMENDMENT NO._____        Calendar No._____

Purpose: To amend the Internal Revenue Code of 1986 to permit a 100 percent levy for payments to Federal vendors relating to property, to require a study on how to reduce the amount of Federal taxes owed but not paid by Federal contractors, and to make certain improvements in the laws relating to the employment and training of veterans.

**IN THE SENATE OF THE UNITED STATES—112th Cong., 1st Sess.**

# H. R. 674

To amend the Internal Revenue Code of 1986 to repeal the imposition of 3 percent withholding on certain payments made to vendors by government entities, to modify the calculation of modified adjusted gross income for purposes of determining eligibility for certain healthcare-related programs, and for other purposes.

Referred to the Committee on _____ and ordered to be printed

Ordered to lie on the table and to be printed

AMENDMENT intended to be proposed by Mr. TESTER (for himself, Mrs. MURRAY, Mr. BAUCUS, Ms. STABENOW, Mr. BROWN of Ohio, Mr. REID, Mr. AKAKA, Ms. CANTWELL, Mr. LEAHY, Mr. CASEY, Mr. COONS, Mr. MENENDEZ, Mr. KERRY, Mr. LAUTENBERG, Mr. MERKLEY, Mr. SANDERS, Mrs. SHAHEEN, Mr. BENNET, Mr. WEBB, Mr. BEGICH, Ms. LANDRIEU, and Mr. SCHUMER)

Viz:

1        Strike title II and insert the following:

MCG11406                                                    S.L.C.

2

# TITLE II—VOW TO HIRE HEROES

**SEC. 201. SHORT TITLE.**

This title may be cited as the "VOW to Hire Heroes Act of 2011".

## Subtitle A—Retraining Veterans

**SEC. 211. VETERANS RETRAINING ASSISTANCE PROGRAM.**

(a) PROGRAM AUTHORIZED.—

(1) IN GENERAL.—Not later than July 1, 2012, the Secretary of Veterans Affairs shall, in collaboration with the Secretary of Labor, establish and commence a program of retraining assistance for eligible veterans.

(2) NUMBER OF ELIGIBLE VETERANS.—The number of unique eligible veterans who participate in the program established under paragraph (1) may not exceed—

(A) 45,000 during fiscal year 2012; and

(B) 54,000 during the period beginning October 1, 2012, and ending March 31, 2014.

(b) RETRAINING ASSISTANCE.—Except as provided by subsection (k), each veteran who participates in the program established under subsection (a)(1) shall be entitled to up to 12 months of retraining assistance provided by the Secretary of Veterans Affairs. Such retraining assistance may only be used by the veteran to pursue a pro-

3

1 gram of education (as such term is defined in section

2 3452(b) of title 38, United States Code) for training, on

3 a full-time basis, that—

4          (1) is approved under chapter 36 of such title;

5          (2) is offered by a community college or tech-

6      nical school;

7          (3) leads to an associate degree or a certificate

8      (or other similar evidence of the completion of the

9      program of education or training);

10          (4) is designed to provide training for a high-

11      demand occupation, as determined by the Commis-

12      sioner of Labor Statistics; and

13          (5) begins on or after July 1, 2012.

14      (c) MONTHLY CERTIFICATION.—Each veteran who

15 participates in the program established under subsection

16 (a)(1) shall certify to the Secretary of Veterans Affairs

17 the enrollment of the veteran in a program of education

18 described in subsection (b) for each month in which the

19 veteran participates in the program.

20      (d) AMOUNT OF ASSISTANCE.—The monthly amount

21 of the retraining assistance payable under this section is

22 the amount in effect under section 3015(a)(1) of title 38,

23 United States Code.

24      (e) ELIGIBILITY.—

4

1         (1) IN GENERAL.—For purposes of this section,

2 an eligible veteran is a veteran who—

3         (A) as of the date of the submittal of the

4 application for assistance under this section, is

5 at least 35 years of age but not more than 60

6 years of age;

7         (B) was last discharged from active duty

8 service in the Armed Forces under conditions

9 other than dishonorable;

10         (C) as of the date of the submittal of the

11 application for assistance under this section, is

12 unemployed;

13         (D) as of the date of the submittal of the

14 application for assistance under this section, is

15 not eligible to receive educational assistance

16 under chapter 30, 31, 32, 33, or 35 of title 38,

17 United States Code, or chapter 1606 or 1607

18 of title 10, United States Code;

19         (E) is not in receipt of compensation for a

20 service-connected disability rated totally dis-

21 abling by reason of unemployability;

22         (F) was not and is not enrolled in any

23 Federal or State job training program at any

24 time during the 180-day period ending on the

MCG11406

S.L.C.

5

1  date of the submittal of the application for as-

2  sistance under this section; and

3  (G) by not later than October 1, 2013,

4  submits to the Secretary of Labor an applica-

5  tion for assistance under this section containing

6  such information and assurances as that Sec-

7  retary may require.

8  (2) DETERMINATION OF ELIGIBILITY.—

9  (A) DETERMINATION BY SECRETARY OF

10  LABOR.—

11  (i) IN GENERAL.—For each applica-

12  tion for assistance under this section re-

13  ceived by the Secretary of Labor from an

14  applicant, the Secretary of Labor shall de-

15  termine whether the applicant is eligible

16  for such assistance under subparagraphs

17  (A), (C), (F), and (G) of paragraph (1).

18  (ii) REFERRAL TO SECRETARY OF

19  VETERANS AFFAIRS.—If the Secretary of

20  Labor determines under clause (i) that an

21  applicant is eligible for assistance under

22  this section, the Secretary of Labor shall

23  forward the application of such applicant

24  to the Secretary of Veterans Affairs in ac-

MCG11406                                                    S.L.C.

6

1          cordance with the terms of the agreement

2          required by subsection (h).

3              (B) DETERMINATION BY SECRETARY OF

4          VETERANS AFFAIRS.—For each application re-

5          lating to an applicant received by the Secretary

6          of Veterans Affairs under subparagraph (A)(ii),

7          the Secretary of Veterans Affairs shall deter-

8          mine under subparagraphs (B), (D), and (E) of

9          paragraph (1) whether such applicant is eligible

10         for assistance under this section.

11     (f) EMPLOYMENT ASSISTANCE.—For each veteran

12 who participates in the program established under sub-

13 section (a)(1), the Secretary of Labor shall contact such

14 veteran not later than 30 days after the date on which

15 the veteran completes, or terminates participation in, such

16 program to facilitate employment of such veteran and

17 availability or provision of employment placement services

18 to such veteran.

19     (g) CHARGING OF ASSISTANCE AGAINST OTHER EN-

20 TITLEMENT.—Assistance provided under this section shall

21 be counted against the aggregate period for which section

22 3695 of title 38, United States Code, limits the individ-

23 ual's receipt of educational assistance under laws adminis-

24 tered by the Secretary of Veterans Affairs.

25     (h) JOINT AGREEMENT.—

MCG11406 S.L.C.

7

1    (1) IN GENERAL.—The Secretary of Veterans

2  Affairs and the Secretary of Labor shall enter into

3  an agreement to carry out this section.

4    (2) APPEALS PROCESS.—The agreement re-

5  quired by paragraph (1) shall include establishment

6  of a process for resolving disputes relating to and

7  appeals of decisions of the Secretaries under sub-

8  section (e)(2).

9  (i) REPORT.—

10    (1) IN GENERAL.—Not later than July 1, 2014,

11  the Secretary of Veterans Affairs shall, in collabora-

12  tion with the Secretary of Labor, submit to the ap-

13  propriate committees of Congress a report on the re-

14  training assistance provided under this section.

15    (2) ELEMENTS.—The report required by para-

16  graph (1) shall include the following:

17      (A) The total number of—

18        (i) eligible veterans who participated;

19      and

20        (ii) associates degrees or certificates

21      awarded (or other similar evidence of the

22      completion of the program of education or

23      training earned).

24      (B) Data related to the employment status

25    of eligible veterans who participated.

MCG11406                                                                S.L.C.

8

1    (j) FUNDING.—Payments under this section shall be
2  made from amounts appropriated to or otherwise made
3  available to the Department of Veterans Affairs for the
4  payment of readjustment benefits. Not more than
5  $2,000,000 shall be made available from such amounts for
6  information technology expenses (not including personnel
7  costs) associated with the administration of the program
8  established under subsection (a)(1).

9    (k) TERMINATION OF AUTHORITY.—The authority to
10  make payments under this section shall terminate on
11  March 31, 2014.

12    (l) APPROPRIATE COMMITTEES OF CONGRESS DE-
13  FINED.—In this section, the term "appropriate commit-
14  tees of Congress" means—

15        (1) the Committee on Veterans' Affairs and the
16      Committee on Health, Education, Labor, and Pen-
17      sion of the Senate; and

18        (2) the Committee on Veterans' Affairs and the
19      Committee on Education and the Workforce of the
20      House of Representatives.

MCG11406 S.L.C.

9

# Subtitle B—Improving the Transition Assistance Program

SEC. 221. MANDATORY PARTICIPATION OF MEMBERS OF
THE ARMED FORCES IN THE TRANSITION AS-
SISTANCE PROGRAM OF DEPARTMENT OF
DEFENSE.

(a) IN GENERAL.—Subsection (c) of section 1144 of title 10, United States Code, is amended to read as follows:

"(c) PARTICIPATION.—(1) Except as provided in paragraph (2), the Secretary of Defense and the Secretary of Homeland Security shall require the participation in the program carried out under this section of the members eligible for assistance under the program.

"(2) The Secretary of Defense and the Secretary of Homeland Security may, under regulations such Secretaries shall prescribe, waive the participation requirement of paragraph (1) with respect to—

"(A) such groups or classifications of members as the Secretaries determine, after consultation with the Secretary of Labor and the Secretary of Veterans Affairs, for whom participation is not and would not be of assistance to such members based on the Secretaries' articulable justification that there is extraordinarily high reason to believe the exempt-

# APPLICATION FOR ADMISSION

MAIL TO:


## DEL MAR COLLEGE

Office of Admissions and Registrar
101 Baldwin Blvd.
Corpus Christi, TX 78404-3897
(361) 698-1255 or 1-800-652-3357

**Please PRINT all entries except your signature.**

## STUDENT INFORMATION

**1. Social Security Number**
4 4 9 – 7 8 – 2 3 2 9

**2. Complete Legal Name**
WADE            ELROY            K.
Last            First            Middle Initial
E.K. WADE; E. KASHKA WADE
Other names under which records may be found

**3. Address** (You will be classified as an out-of-district student if you provide only a P.O. Box)
2002 CIMARRON BLVD.,            343
Number and Street            Apt. Number
CORPUS CHRISTI, TX            78414
City            State            ZIP
NUECES COUNTY
County

**If you have a P.O. Box, please provide a physical address:**

Number and Street            Apt. Number

City            State            ZIP

Emergency Contact Name            Phone

**4. Email address** WADENWATEREK47@GMAIL.com

**5. Phone** (925) 323-1578
Home/Cell            Work

**6. Birthdate** 9 / 12 / 47
Month   Day   Year

**7.** ☒ Male   ☐ Female

**8. Are you a veteran?** ☒ Yes   ☐ No

**9. Date you plan to enroll:** Year 2012
Check one:   ☐ Fall   ☐ Spring   ☒ Summer I   ☐ Summer II

**10. Race/Ethnicity**
   a. Are you a Hispanic or Latino?   ☐ Yes   ☒ No
   b. Select the racial category or categories with which you most closely identify. Check as many as apply.
   2.   I   ☐ American Indian or Alaskan Native
   3.   O   ☐ Asian
   4.   B   ☒ Black or African American
   5.   N   ☐ Native Hawaiian or Other Pacific Islander
   6.   W   ☐ White

   (For state and/or federal reporting purposes only)

## FOR OFFICE USE
Res/County _____

**Indicate your major course of study:** (See insert for list of majors)
CRIMINAL JUSTICE
Name of Major

**Major Code:** C R I J . A A

## EDUCATIONAL DATA

**11. High School or GED information**

☒ High School (Please write name of high school below)
RAY MILLER HIGH
CORPUS CHRISTI, TX            1966
City            State            Graduation Date
(You must provide an official high school transcript if you have never attended college. Home-schooled graduates must provide a notarized transcript. If you had any Tech-Prep courses in high school, please notify the Admissions and Registrar's office.)
OR
☐ GED Certificate: Date completed _____
(You must provide the GED scores if you have never attended college.)

**Admissions Status:**
1  ☒ High school graduate
2  ☐ GED
3  ☐ Transient (attending summer school only; attend another college during the regular terms)
4  ☒ Transfer from another college
5  ☐ Reentering Del Mar after a one-year absence
6  ☐ No high school diploma or GED (need approval)
7  ☐ Dual Credit (need approval)
   Prospective Date of Graduation _____
8  ☐ Early Admissions (need approval)

**Placement tests taken** (Include date taken)
1  ☐ ACT _____   4  ☐ THEA (formerly TASP) _____
2  ☐ SAT _____
3  ☐ COMPASS _____
Were scores sent to Del Mar?   ☐ Yes   ☐ No

**12. Indicate how long you plan to study at Del Mar College** (Check one only)
1  ☐ One semester only            5  ☒ Two semesters only
2  ☐ One year only                6  ☐ Two years only
3  ☐ Three years only             7  ☐ More than three years
4  ☐ Summer classes only

**13. Primary reason for attending Del Mar College** (Check one only)*
1  ☐ Earn an Associate's degree            4  ☒ To get a better job, or improve skills for current job
2  ☐ Earn a Certificate
3  ☐ Earn credits for transfer             5  ☐ Personal enrichment
*Only Answer 1,2,3 in Question 13 to qualify for consideration for financial aid.

**14. Have you ever attended Del Mar College?**   ☐ Yes   ☒ No
If yes, indicate date(s) of attendance: _____

**15. Have you ever attended any other colleges? (including in-state, out-of-state or foreign colleges?** ☒ Yes   ☐ No

| List colleges attended | Dates |
|---|---|
| SAINT MARY'S COLLEGE | 2004-2006 |
| GOLDEN GATE UNIVERSITY | 1996-1997 |
| CAL STATE HAYWARD | 1986-1991 |

**Please read and complete this section accurately.**

## Core Residency Questions

Texas Higher Education Coordinating Board rule 21.731 requires each student applying to enroll at an institution to respond to a set of core residency questions for the purpose of determining the student's eligibility for classification as a resident.

**PART A.  Previous Enrollment.  For all students.**

1.  During the 12 months prior to the term for which you are applying, did you attend a public college or university in Texas in a fall or spring term?
    ☐ Yes  ☒ No

    If you answered **no,** please continue to Part C.
    If you answered **yes,** complete questions 2-5:

2.  What Texas public institution did you last attend?  (Give full name, not just initials.)   *EL CENTRO Junior College (Fall*
    *ROY MILLER HIGH School*

3.  In which terms were you last enrolled? (check all that apply)   ☐ Fall 201__   ☐ Spring 201__

4.  During your last semester at a Texas public institution, did you pay resident (in-state) or nonresident (out-of-state)?
    ☒ Resident (in-state)   ☐ Nonresident (out-of-state)   ☐ Unknown

5.  If you paid in-state tuition at your last institution, was it because you were classified as a resident or because you were a nonresident who received a waiver?
    ☒ Resident (in-state)   ☐ Nonresident with a waiver   ☐ Unknown

    **IMPORTANT:** If you were enrolled at a Texas public institution during a fall or spring semester within the previous 12 months and were classified as a Texas resident, **STOP NOW,** skip to **Part H,** sign and date this form and submit it to your institution. If you were not enrolled, or if you were enrolled but classified as a nonresident, or if you do not know how you were classified, continue to **Part B.**

**PART B.  Residency Claim.**

6.  Are you a resident of Texas?...................................................................................................................   ☒ Yes  ☐ No
    If you answered **yes,** continue to Part C.
    If you answered **no** and believe you should pay the nonresident tuition rate, what is your state/country of residence? _____

    If you are **uncertain,** continue to Part C.

**PART C.  Acquisition of High School Diploma or GED.**

7.  Prior to the term for which you are applying, did you graduate or will you have graduated from high school or complete a GED in Texas? .....  ☒ Yes  ☐ No
8.  If you will have graduated from high school:   *ROY MILLER HIGH        CORPUS CHRISTI, TX*
    Name of High School                    City

9.  Did you live in Texas the 36 months leading up to high school graduation or completion of the GED? ..................................................   ☒ Yes  ☐ No
10. When you begin the semester for which you are applying, will you have lived in Texas for the previous 12 months?...........................   ☐ Yes  ☒ No
11. Are you a U.S. Citizen or Permanent Resident?.............................................................................................................   ☒ Yes  ☐ No

**Instructions to Part C:**
• If you answered "yes" to questions 7, 9, 10 and 11, **STOP NOW** and skip to the Certification in **Part H.**
• If you answered "yes" to questions 7, 9 and 10 but "no" to question 11, **STOP NOW** and skip to the Certification in **Part H.** You will also need to complete an affidavit and turn it in when you turn in this form, but your institution will provide you with that form.
• If you answered "no" to question 7, 9 or 10, continue to **Part D.**

**PART D.  Basis of Claim to Residency.  TO BE COMPLETED BY EVERYONE WHO DID NOT ANSWER "YES" TO QUESTIONS 7, 9, AND 10 OF PART C.**

12. Do you file your own federal income tax as an independent tax payer?....................................................................................   ☒ Yes  ☐ No
    (indicating you claim yourself as a dependent and provide more than half of your own support)

13. Are you claimed as a dependent or are you eligible to be claimed as a dependent by a parent or court-appointed legal guardian? ........   ☐ Yes  ☒ No
    (Parent provides more than half of your support.  A step-parent does not qualify as a parent if he/she has not adopted the student.)

14. If you answered "No" to both questions above, who provides the majority of your support?
    ☐ Self      ☐ Parent or Guardian      ☐ Other (list) _____

**Instructions to Part D.**
• If you answered "yes" to question 12, continue to Part E.
• If you answered "yes" to question 13, skip to Part F.
• If you answered "no" to 12 and 13 and "self" to question 14, continue to Part E.
• If you answered "no" to 12 and 13 and "parent or guardian" to question 14, skip to Part F.
• If you answered "no" to 12 and 13 and "other" to question 14, skip to Part G and provide an explanation, and complete **Part H.**

**PART E.  Questions for students who answered "Yes" to Question 12 or "Self" to Question 14 of PART D.**

15. Are you a U.S. Citizen? **If yes, skip to question 19**.................................................................................... ☒ Yes   ☐ No

16. If no, are you a Permanent Resident of the U.S.? ............................................................................................ ☐ Yes   ☐ No

**Please name country of citizenship and skip to question 19 (must provide copy of residence card)** _____

17. Are you a foreign national whose application for Permanent Resident Status has been preliminarily reviewed?
    (You should have received a fee/filing receipt or Notice of Action (I-797) from USCIS showing your I-485 has been reviewed and has not been rejected. If **yes, skip to question 19**. Must provide copies of documents.

18. Are you a foreign national here with a visa or are you a Refugee, Asylee, Parolee or here under Temporary Protective Status? .......... ☐ Yes   ☐ No

    If so, indicate which visa (must provide copy of visa). _____

19. Do you currently live in Texas? .................................................................................................................... ☒ Yes   ☐ No

20. a. How long have you lived in Texas? _____Years   _10_ Months

    b. What is your main purpose for being in the state?................................ ☒ Go to College  ☒ Establish/maintain a home  ☒ Work
       If for reasons other than those listed, give an explanation in Part G.

21. a. Are you a member of the U.S. military?....................................................................................................... ☒ Yes   ☐ No

    b. If yes, is Texas your Home of Record? ...................................................................................................... ☒ Yes   ☐ No

    c. What state is listed as your military legal residence for tax purposes on your Leave and Earnings Statement? (Must provide proof)  _TEXAS_

22. Do any of the following apply to you? (Check all that apply.)

    a. Hold the title to real property (home, land) in Texas?........................................................................... ☐ Yes   ☒ No

       If yes, date acquired: _____

    b. Own a business in Texas?........................................................................................................................ ☐ Yes   ☒ No

       If yes, date acquired: _____

    c. Hold a state or local license to conduct a business or practice a profession in Texas?. ........................ ☐ Yes   ☒ No

       If yes, date acquired: _____

23. a. Have you been gainfully employed **in Texas for the last 12-month period?**.......................................... ☐ Yes   ☒ No
    b. Have you received services from a social service agency in Texas that provides services to homeless persons
       **for the last 12-month period?**............................................................................................................... ☐ Yes   ☒ No

24. *(Skip this question if you answered "Yes" to any part of of questions 22 or 23.)*

    a. Are you married to a person who could answer "yes" to any part of question 21, 22 or 23?. ................. ☐ Yes   ☒ No

    b. If yes, indicate which question could be answered yes by your spouse: _____

    c. How long have you been married to the Texas resident? _____Years   _____Months

*Skip Part F and Continue to Part G.*

**PART F.  Questions for students who answered "Parent" or "Legal Guardian" to Question 14 of PART D.**

25. Is the parent or legal guardian upon whom you base your claim of residency a U.S. citizen? **If yes, skip to question 29**..................... ☐ Yes   ☐ No

26. If no, is the parent or legal guardian upon whom you base your claim of residency a Permanent Resident? ............................................ ☐ Yes   ☐ No

**If yes, please name your country of residence and skip to question 29 (must provide copy of residence card).** _____

27. Is this parent or legal guardian a foreign national whose application for Permanent Resident Status has been preliminarily reviewed?.......... ☐ Yes   ☐ No
    (He or she should have received a fee/filing receipt or Notice of Action (I-797) from the USCIS showing his or her I-485 has been reviewed and has not been rejected.) Must provide copies of documents.

28. Is this parent or legal guardian a foreign national here with a visa or a Refugee, Asylee, Parolee or here under Temporary Protective Status?....... ☐ Yes   ☐ No

    If yes, indicate which (must provide copy of visa) _____

29. Does this parent or legal guardian currently live in Texas? .......................................................................... ☐ Yes   ☐ No

30. a. If he or she is currently living in Texas, how long has he or she been living in Texas? _____Years   _____Months
    b. What is your parent or legal guardian's main purpose for being in the state? ................. ☐ Go to College  ☐ Establish/maintain a home  ☐ Work
       If for reasons other than those listed, give an explanation in Part G.

31. If he or she is a member of the U.S. military, is Texas his or her Home of Record? ............................................... ☐ Yes ☐ No

What state is listed as his or her military legal residence for tax purposes on his or her Leave and Earnings Statement? (Must provide proof) _____

32. Do any of the following apply to your parent or guardian? (Check all that apply.)

a. Hold the title to real property (home, land) in Texas? ..................................................................................... ☐ Yes ☐ No
If yes, date acquired: _____

b. Own a business in Texas? ............................................................................................................................. ☐ Yes ☐ No
If yes, date acquired: _____

c. Hold a state or local license to conduct a business or practice a profession in Texas? ............................ ☐ Yes ☐ No
If yes, date acquired: _____

33. a. Has your parent been gainfully employed **in Texas the last 12-month period?** ...................................... ☐ Yes ☐ No

b. Has your parent received services from a social service agency in Texas that provides services to homeless persons
**for the last 12-month period?** ........................................................................................................................ ☐ Yes ☐ No

34. *(Skip this question if you answered "Yes" to any part of questions 32 or 33.)*

a. Is your parent or legal guardian married to a person who could answer "yes" to any part of question 31, 32 or 33? ............................ ☐ Yes ☐ No
b. If yes, indicate which question could be answered yes by your parent or guardian's spouse: _____
c. How long has your parent or guardian been married to the Texas resident? _____Years _____Months

**PART G.** Del Mar College will use the following data for federal and/or state law reporting purposes. Your completed responses are voluntary and the information will be used in a nondiscrimanatory manner consistent with applicable civil rights laws.

**35. Marital Status**
S ☐ Single          M ☐ Married
D ☐ Divorced        W ☐ Widowed
P ☐ Separated

**36. Are you a displaced home-maker?**
*(You have worked without pay to take care for the home and family, and for that reason have few marketable skills and are experiencing difficulty in obtaining employment.)*
☐ Yes ☒ No

**37. Current employment status**
F ☐ Employed Full-Time
P ☐ Employed PART-Time (less than 35 hrs.)
☒ Not Employed

**38. Do you speak and under-stand English well?**
*(Answer "No" if English is not your primary language or you consider yourself somewhat limited in the use of English.)*
☒ Yes ☐ No

**39. Are you a single parent?**
☐ Yes ☒ No

**40. What is the highest educational level completed by your father?**
0 ☐ Don't know
1 ☒ Not a high school graduate
2 ☐ High school graduate
3 ☐ Some college or associate's degree
4 ☐ Bachelor's degree or above

**41. What is the highest educational level completed by your mother?**
0 ☐ Don't know
1 ☐ Not a high school graduate
2 ☐ High school graduate
3 ☒ Some college or associate's degree
4 ☐ Bachelor's degree or above

**PART H.   Certification of Information and Oath of Residency. All students must complete this section.**

☒ Notification of Rights under the Family Educational Right to Privacy Act (FERPA): Information collected about you through this application may be held by any institution of higher education to which you apply. With few exceptions, you are entitled on your request to be informed about the collected information. Under Sections 552.021 and 552.023 of the Texas Government Code, you are entitled to receive and review the information. Under section 559.004 of the Texas Government Code, you are entitled to correct information held by an institution that is incorrect. You may correct information held by any institution to which you apply by contacting the institution. The information that is collected about you will be retained and maintained as required by Texas records retention laws (Section 441.180 et seq. of the Texas Government Code) and rules. Different types of information are kept for different periods of time.

☒ I certify that I have read and understand the Important Information about Bacterial Meningitis. Information on Bacterial Meningitis is provided with this application or can be found on the Del Mar College Web site at *www.delmar.edu/admissions/meningitis.php*

☒ I agree to abide by the policies, rules and regulations at Del Mar College. I authorize the college to verify the information I have provided. I certify that the information I have provided is complete and correct and I understand that the submission of false information is grounds for rejection of my application, withdrawal of any offer of acceptance, cancellation of enrollment and/or appropriate disciplinary action. I understand that officials of my college will use the information submitted on this form to determine my status for residency eligibility. I authorize the college to electronically access my records regarding the Texas Success Initiative. I agree to notify the proper officials of the institution of any changes in the information provided.

**Financial Aid Information**
You must apply for financial aid separately. You can apply for financial aid online. Contact Financial Aid Services at (361) 698-1293 or toll-free at (800) 652-3357 for more information.

**Non-Discrimination Clause**
Admission to any of the Texas institutions of higher education and any of their sponsored programs is open to qualified individuals regardless of race, color, gender, sexual orientation, creed, age, national origin or disability.

Signature: _E. K. Wade_

Date: _5-15-12_

| FOR OFFICE USE |
| --- |
| Remarks _____ |
| Approved Texas resident ☐ Yes ☐ No |
| Verified by _____ Date _____ |
| Approved classification change to Texas resident ☐ Yes ☐ No |
| Verified by _____ Date _____ |
| Semester Effective _____ |
| Reason for status change _____ |

© 2010 Del Mar College. All rights reserved.          Del Mar College is an Equal Opportunity/Affirmative Action Institution.          Revised 11/2010 CRO RWG 2010-2011 ITJ 78



Case 2:12-cv-00179   Document 1   Filed on 06/01/12 in TXSD   Page 56 of 62

<u>Go to the Start section</u> / Interview Section Disabled / Final Steps Disabled

● FAQ    Help    Contents

Frequently Asked
Questions



**VRAP Application Form 1990R Joint DOL/VA Application for the Veterans Retraining
Assistance Program.**
*OMB Control Number 1205-0491, Exp. 10/31/2012*

<u>**GENERAL**</u>

1. What is your name?

   Salutation  **Mr**

         First  **Elroy**

      Middle  **K**

         Last  **Wade**

       Suffix

2. What is your date of birth?

   **09**  / **12**  / **1947**
   month    day    year

<u>**DEPARTMENT OF LABOR ELIGIBILITY DETERMINATION**</u>

3. Are you unemployed?  ● Yes    No
   *People who are (1) jobless, (2) looking for jobs, and (3) available for work are unemployed (all
   three criteria must be met in order to be unemployed).*

4. Have you been enrolled in a federal or state job training program in the past 180 days?
   Yes  ● No
   *Examples include any training program funded by: a local career center, a One-Stop Career
   Center, any state or local employment office.*

The information provided on this application will be used for the purposes of determining your
eligibility to receive retraining assistance benefits from the Department of Labor. The information
may be audited for accuracy. By checking the box below, you agree to the following statement:

☑ I swear or affirm that the statements on this application, to the best of my knowledge, are
true and correct. I understand that by submitting this application, I am making a statement to the
government for the purposes of obtaining federal benefits. Section 1001 of Title 18 of the U.S.
Code makes it a criminal offense for any person to knowingly and willfully make false or
fraudulent statements to any department or agency of the United States Government.
Additionally, I understand that if the information I have provided on this application is found to
be false or incorrect, I will be immediately unable to receive benefits under this program, and I
may be required to reimburse the Government for any benefits I have already received.

## *Back / Submit for DOL Approval*

**U.S. Department of Labor**      Office of the Assistant Secretary for
Veterans' Employment and Training
Washington, D.C. 20210



**Date: May 22, 2012**

**Dear Mr Elroy K Wade:**

Based on the information provided on your application, the Department of Labor has determined that you are not eligible to participate in the Veterans Retraining Assistance Program (VRAP). You have not met the following criteria for the VRAP:

- **The applicant must be at least 35 years old and not older than 60 at time of application;**

If the Department of Labor determines the applicant is eligible for assistance under these factors, the application is forwarded to the Department of Veterans Affairs for its own eligibility determination according to additional criteria. (See the VOW to Hire Heroes Act of 2011, Title II of Public Law 112-56, section 211(e). However, based on the information your application provided regarding the above four factors, the Department of Labor has determined that you are not eligible for the VRAP.

If you would like to pursue other training besides VRAP, you may contact the manager of the One-Stop Career Center nearest you for assistance. You can find the nearest One-Stop Career Center by calling 1-877-US2-JOBS (1.877.872.5627) toll-free, or by going to www.servicelocator.org. The One-Stop Career Center may help you to locate training programs or employment that suits your needs. You can also ask to speak to a Local Veterans' Employment Representative (LVER) about available employment services.

If you disagree with this decision and still wish to pursue training through the VRAP, you may file an appeal of the Department of Labor's determination with the Director for Veterans' Employment and Training (DVET) assigned to the state in which you applied.

Staff at the One-Stop Career Center can provide you with the address of the DVET for your State or you can visit www.dol.gov/vets/aboutvets/contacts/main.htm for a staff directory by State. To file an appeal, you must write a letter to the DVET explaining why you disagree with the determination that you are ineligible according to the above four criteria. Appeals must be filed within 60 days of receipt of this letter. The DVET will review your appeal and provide you with a written decision. The DVET's decision on appeal constitutes final agency action.

Sincerely,

John K. Moran
Deputy Assistant Secretary
Veterans Employment and Training Service

```
------------------------------------------------------------------------
MEDICAL RECORD                                              Progress Notes
------------------------------------------------------------------------
```

NOTE DATED: 05/24/2012 14:23
LOCAL TITLE: IMC PROGR NOTE-STAFF PHSICIAN
STANDARD TITLE: PHYSICIAN NOTE
VISIT: 05/24/2012 14:00 CC PC DR CASABAR
DATE: MAY 24, 2012

WADE,ELROY KASHKA   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
Age:  64   Sex:  MALE   Race:  BLACK OR AFRICAN AMERICAN

Weight:  204.4 lb [92.9 kg] (05/24/2012 14:07)
Height:  73 in [185.4 cm] (03/21/2012 13:20)
BMI: 27.0
Respiration:  18 (05/24/2012 14:07)
Temperature:  97.3 F [36.3 C] (05/24/2012 14:07)
Pulse:  80 (05/24/2012 14:07)
Blood Pressure:  122/83 (05/24/2012 14:07)
Pain Scale (0=None-10=Worst):  0 (05/24/2012 14:07)

Allergies:  Patient has answered NKA

Medications:  Active Inpatient and Outpatient Medications (including Supplies):

|     | Active Outpatient Medications | Status<br>Refills | Issue Date<br>Last Fill<br>Expiration |
|-----|-------------------------------|-------------------|----------------------------------------|
| 1)  | ACETAM 500/HYDROCODONE TAB 5MG  Qty: 10 for 2 days  Sig: TAKE 1 TABLET BY MOUTH EVERY 6 HOURS FOR PAIN CONTROL | ACTIVE<br>Refills: 2 | Issu:03-20-12<br>Last:03-21-12<br>Expr:09-20-12 |
| 2)  | ALBUTEROL 90MCG (CFC-F) 200D ORAL INHL  Qty: 2 for 60 days  Sig: INHALE 2 PUFFS BY INHALATION EVERY 6 HOURS AS NEEDED FOR BREATHING | ACTIVE<br>Refills: 2 | Issu:02-02-12<br>Last:03-23-12<br>Expr:02-02-13 |
| 3)  | EpiNEPHRIN AUTO/INJECTOR 0.3MG  Qty: 2 for 30 days  Sig: INJECT 0.3MG (0.3ML) IM EVERY DAY AS NEEDED FOR SEVERE ALLERGIC REACTION | ACTIVE<br>Refills: 1 | Issu:02-15-12<br>Last:02-15-12<br>Expr:02-15-13 |
| 4)  | GUAIFENESIN SYRUP (ALC-F/SF) 100MG/5ML  Qty: 240 for 30 days  Sig: TAKE 1 TEASPOONFUL BY MOUTH EVERY 6 HOURS AS NEEDED FOR COUGH/CONGESTION | ACTIVE<br>Refills: 1 | Issu:02-15-12<br>Last:02-15-12<br>Expr:02-15-13 |
| 5)  | LOSARTAN POTASSIUM  25MG TAB  Qty: 270 for 90 days  Sig: TAKE TWO TABLETS BY MOUTH EVERY MORNING AND TAKE ONE TABLET EVERY NIGHT FOR BLOOD PRESSURE/KIDNEYS | ACTIVE<br>Refills: 1 | Issu:05-08-12<br>Last:05-09-12<br>Expr:05-09-13 |
| 6)  | MOMETASONE 220MCG INHL,ORAL,PWDR,60 DOSE  Qty: 2 for 90 days  Sig: INHALE 1 INHALATION BY MOUTH EVERY DAY FOR | ACTIVE<br>Refills: 1 | Issu:12-23-11<br>Last:03-14-12<br>Expr:12-23-12 |

** THIS NOTE CONTINUED ON NEXT PAGE **

```
------------------------------------------------------------------------
WADE,ELROY KASHKA                              Printed:05/29/2012 14:
           VA TEXAS VALLEY COASTAL BEND HEALTHCARE CENTER
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 DOB:09/12/1947   Pt Loc: OUTPATIENT         Vice SF 509
------------------------------------------------------------------------
```

```
------------------------------------------------------------------
MEDICAL RECORD                                      Progress Notes
------------------------------------------------------------------
```
05/24/2012 14:23        ** CONTINUED FROM PREVIOUS PAGE **

        BREATHING
7)      PENICILLIN VK TAB 500 MG  Qty: 30 for 7    ACTIVE      Issu:03-20-12
        days   Sig: TAKE TWO TABLETS BY MOUTH       Refills: 2  Last:03-21-12
        NOW THEN TAKE ONE TABLET EVERY 6 HOURS                  Expr:03-21-13
        TILL COMPLETED FOR INFECTION
I have discussed this list with the patient/caregiver and I believe this list
is accurate to include Non-VA meds, over the counter meds, herbals and PRN meds.

Problem List:  Active Problem
Chronic Obstructive Pulmonary Disea 02/02/2012 SILVA,ESTRELLA
Hypertension * (ICD-9-CM 401.9) 401 02/02/2012 SILVA,ESTRELLA
Hypersensitivity reaction (ICD-9-CM 02/15/2012 HICKSON,ARTHUR

INTERIM HISTORY:
Patient came to the clinic today because of feeling depressed and anxious. He
was upset that he could not qualify for the VA program to retrain Veterans. He
wanted to go back to school to re-educate himself after he was laid off
from his job in California. He moved to Corpus Christi to take care of
his mother. Being unable to obtain the education has made him very depressed and
anxious. He has difficulty
sleeping. He repeatedly said that he is not suicidal or has any suicidal
ideation. He
had a previous bout of depression in early 2000 when he got separated from his
wife.
He used to take Paxil 10 mg daily which improved his depression. He stopped it
after he got on with his life and felt better. Recently, he was struggling with
depression. He tried to keep himelf busy and played golf fairly regularly. He
denied alcohol abuse. His blood pressure has been stable and continues to take
his medications. He denied headache, dizziness or chest pain.

REVIEW OF SYSTEMS:

GENERAL: Feels depressed, fair appetite, no lost of weight, anxious no memory
loss

HEENT: Denied headache; Denied Dizziness; denied blurring of vision; no hearing
loss

RESPIRATORY: Denied cough, no shortness of breath

CARDIOVASCULAR: Denied Chest pain; denied palpitation; denied loss of
consciousness

GASTROINTESTINAL:  Denied nausea, vomiting; Denied abdominal pain;  no melena;
no hematochezia;had colonoscopy previously

GENITO URINARY: Denied dysuria; denied hematuria
                ** THIS NOTE CONTINUED ON NEXT PAGE **
```
------------------------------------------------------------------
WADE,ELROY KASHKA                                Printed:05/29/2012 14:
        VA TEXAS VALLEY COASTAL BEND HEALTHCARE CENTER
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 DOB:09/12/1947    Pt Loc: OUTPATIENT        Vice SF 509
------------------------------------------------------------------
```

```
--------------------------------------------------------------------------
MEDICAL RECORD                                              Progress Notes
--------------------------------------------------------------------------
05/24/2012 14:23       ** CONTINUED FROM PREVIOUS PAGE **
```

NEUROLOGICAL: denied weakness; denied numbness

ENDOCRINOLOGICAL: Denied Polydipsia; Denied Polyphagia; Denied Polyuria

PHYSICAL EXAMINATION:

General: Alert, oriented to 3 spheres, depressed, well dressed, ambulatory, not in acute distress

HEENT: Normocephalic, atraumatic, pink palpebral conjunctivae, anicteric sclerae, Pupils equally reactive to light and accomodation;  Ears: good hearing Mouth: no active oral lesion

NECK: Supple, no JVD, No bruit, no masses or Lymphadenopathy; no thyromegaly

HEART: Regular rate and rhythm, S1, S2; no gallops; no murmur, no rubs

LUNGS: Symmetrical expansion, clear breath sounds

ABDOMEN: Flat, soft, non-tender, no hepatosplenomegaly, no bruit, no masses, normoactive bowel sounds.

Rectal exam: deferred

EXTREMITIES: No edema or cyanosis

NEUROLOGICAL: Alert and oriented; CN: Intact; Motor- no deficits; Sensory- no deficits.

SKIN: Dry, warm


ASSESSMENT:
Depression
Anxiety Disorder
Hypertension


FOLLOW-UP PLAN:
        1.  Return to clinic:1 month to follow-up on his treatment
        2.  Lab prior to next clinic visit:
        3.  Above lab to be done fasting:

ADDITIONAL PLAN:
We had a long discussion about his depression because it has been incapacitating him. He tries to keep himself busy and plays Golf on a regular basis. he has had
```
                    ** THIS NOTE CONTINUED ON NEXT PAGE **
--------------------------------------------------------------------------
WADE,ELROY KASHKA                                   Printed:05/29/2012 14:
           VA TEXAS VALLEY COASTAL BEND HEALTHCARE CENTER
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 DOB:09/12/1947      Pt Loc: OUTPATIENT          Vice SF 509
--------------------------------------------------------------------------
```

---------------------------------------------------------------------
MEDICAL RECORD                                          Progress Notes
---------------------------------------------------------------------
05/24/2012 14:23        ** CONTINUED FROM PREVIOUS PAGE **

Depression previouslyt and used to take Paroxetine 10 mgs po q daily. he
requested mental health for psychotherapy and psychological problem. He seems to
have positive attitude and was smiling and joking by the time he left the
clinic.
Started on zolpidem for sleep 5 mgs po at bedtime prn. I told him to start at
1/2 tab ( 2.5 mgs ) and increased to 5 if the 2.5 is not effective. I told him
that once the Paroxetine becomes affective he might not need the Zolpidem. Told
him to be careful about risk of fall and excessive drowsiness.
I will follow-him up in a month to monitor his progress. I advised him to call
if he is experiencing any problem with medications.

CLINICAL REMINDER ACTIVITY
   V17 ALL Colon Cancer Screen:
      The patient was given iFOBT kit
         3 Colorectal Cancer screening iFOBT kit given to patient with
      instructions on how to complete and return to VA.
         * Patient was educated on Colorectal Cancer, given instructions of
         collection of specimen, and obtaining results. All questions were
         answered to the patient's satisfaction.
            Comment: INSTRUCTED ON COLON CANCER
   V17 ALL Tdap (Pertussis) Immun:
      Tdap (Tetanus/Diptheria/Pertussis) Immunization was received
      previously.
            Date: July, 2010  ? Exact date is unknown
            Location: Kaiser Permanente, California




   V17 P HIV Screening:
      Patient has been offered HIV testing and has declined. I have
      explained that HIV testing is recommended for all adults, even if all
      risk factors are absent.
         Date: May 24, 2012
   V17 P Eval + Depr/PTSD Screen:
      SUICIDE RISK SCREENING
         1. Do you have current thoughts about suicide or self harm?
         No.
         2. Do you have a prior history of past attempts?
         No.
         3. Are you feeling hopeless and/or helpless?
         No.
      LOW RISK: Given the veteran's presentation at the time of this
      assessment, in my clinical judgement the veteran's current risk
      potential for suicidal behavior is low and patient is judged not to
                    ** THIS NOTE CONTINUED ON NEXT PAGE **
---------------------------------------------------------------------
WADE,ELROY KASHKA                              Printed:05/29/2012 14:
            VA TEXAS VALLEY COASTAL BEND HEALTHCARE CENTER
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 DOB:09/12/1947      Pt Loc: OUTPATIENT         Vice SF 509
---------------------------------------------------------------------

```
-------------------------------------------------------------------------
MEDICAL RECORD                                            Progress Notes
-------------------------------------------------------------------------
```
05/24/2012 14:23     ** CONTINUED FROM PREVIOUS PAGE **

     be at significant risk for self harm.


     Positive Depression Screen
     PROVIDER ASSESSMENT AND PLAN
      The results of the PHQ-2 have been reviewed and the patient
     assessed including assessment of suicide risk. Based on the
     assessment the following disposition plan will be implemented:
      Patient to be evaluated by Mental Health
       Mental Health Evaluation (non-urgent, within 14 days) needed.
      Referral made, contact information for Mental Health and
      instructions for accessing emergency services provided.
       Comment: Patient was started on antidepressant. He used to
      be on Paroxetine. he wants to also have pschotherapy

         Signed by: /es/ FELIPE S CASABAR
                  Felipe S Casabar, Jr., MD
                  05/24/2012 16:36

```
-------------------------------------------------------------------------
```
WADE,ELROY KASHKA                              Printed:05/29/2012 14:
          VA TEXAS VALLEY COASTAL BEND HEALTHCARE CENTER
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 DOB:09/12/1947    Pt Loc: OUTPATIENT      Vice SF 509
```
-------------------------------------------------------------------------
```